Phyllis **CHAPLIN, on behalf of herself and all others similarly situated; and Epilepsy Foundation of America, Plaintiffs,**

v.

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Defendants.**

No. 79 Civ. 730 (MEL).

United States District Court, S.D. New York.

July 11, 1984.

---

* There was no test for "lead" at either the 2 or 4     foot levels.

**520**

The Legal Aid Society, John E. Kirklin, New York City, Jeffrey G. Abrandt, Attorney-in-Charge, Brooklyn, N.Y., for plaintiffs; Director of Litigation Civil Appeals & Law Reform Unit, James C. Francis IV, New York City, and Jonathan Ben-Asher, Brooklyn, N.Y., of counsel.

Ernest J. Williams, New York City, for defendants; Sheila Solomon Rosenrauch, New York City, of counsel.

LASKER, District Judge.

In a decision dated February 10, 1984, addressing defendants' motion to dismiss the complaint, this Court reserved decision on the issue whether the individual defendants, employees and officers of Consolidated Edison Company of New York, Inc. ("Con Ed"), may be sued in their individual capacities under section 504 of the Rehabilitation Act of 1973, (the "Act"), 29 U.S.C. § 794. The parties have submitted further briefing on this issue, as requested, and we now deny the motion to dismiss the individual defendants.

Section 504 of the Act provides, in relevant part:

"No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...."

There appears to be no authority directly addressing the question whether a corporation's directors, officers and employees who are alleged to be responsible for policies which violate section 504 may be liable in their individual capacities under that section. However, some cases have assumed, without deciding, that such liability exists. The decisions in *Pomerantz v. County of Los Angeles,* 674 F.2d 1288, 1291 (9th Cir. 1982), and *Tatro v. Texas,* 516 F.Supp. 968, 973–74 (N.D.Tex.1981), *aff'd,* 703 F.2d 823 (5th Cir.1983), *cert. granted,* —— U.S. ——, 104 S.Ct. 523, 78 L.Ed.2d 707 (1983), discussed the question whether governmental immunity might shield governmental officials sued individually under § 504.[1] In both cases, the officials involved were held to be protected from individual liability under various theories of immunity. There would be no occasion for such a determination if section 504 permitted suits only against governmental entities and not against individual officials.

Moreover, defendants' primary argument against individual liability for violations of § 504—that § 504 is violated only if a "recipient" of federal funding engages in discrimination, and the individual defendants are not "recipients" within the meaning of the regulation—is unpersuasive. Although the definition of a "recipient" set forth in the regulations promulgated under § 504 does not include agents of an entity receiving federal financial assistance,[2] it does not

---

**1.** *See also Halderman v. Pennhurst State School & Hospital,* 446 F.Supp. 1295, 1324 (E.D.Pa. 1977), *aff'd in part and rev'd in part on other grounds,* 612 F.2d 84 (3d Cir.1979), *rev'd on* other grounds, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).

**2.** "Recipient" is defined as

necessarily follow that such agents are not liable if they are responsible for discriminatory policies carried out by a recipient of federal funding. As plaintiffs point out, 42 U.S.C. § 1983 predicates liability on the requirement that the challenged actions were carried out under color of state law, but nevertheless does not restrict liability to state agencies. Similarly, § 504 and the accompanying regulations can be read as requiring a showing that the discrimination took place under a federally funded program, but as permitting a suit against individuals responsible for discriminatory policies as well as against the entity receiving federal funds.[3]

In addition, it is appropriate to note that the statute itself does not speak of discrimination *by* a recipient of federal funds, but instead forbids discrimination *under* any program or activity receiving federal funding.

In sum, although we recognize that the question is not free from doubt, we find plaintiffs' arguments to be more persuasive on this issue. Accordingly, the motion to dismiss the individual defendants is denied.

It is so ordered.

"any state or its political subdivisions, any instrumentality of a State or its political subdivisions, any public or private agency, institution, organization, or other entity, or any person to which Federal financial assistance is extended directly or through another recipient, including any successor, assignee, or transferee of a recipient, but excluding the ultimate beneficiary of the assistance."
29 C.F.R. § 32.3 (1983).

3. Thus, the cases cited by defendants are not in point. In *Garrity v. Gallen,* 522 F.Supp. 171 (D.N.H.1981), the issue was whether the "recipient" whose funds were to be cut off under § 504 was a single school, or the entire state of New Hampshire. The court's statement that § 504 applies only to recipients of federal assistance must be understood in that context. In *Patton v. Dumpson,* 498 F.Supp. 933 (S.D.N.Y.1980), the court held that a private corporation and its officers are not presumed to be in privity, and therefore that a suit against a corporate officer cannot be deemed an action against the corporation. The court dismissed the suit against the officer because the private corporation had not been sued. The court did not consider whether an action under § 504 would lie if both the officer and the corporation had been named.