James **JOHNSON**, Plaintiff,

v.

The **NEW YORK HOSPITAL**, Dr. David Skinner, President, Jody Sklar, Asst. Dir. of Nursing, Defendants.

No. 94 Civ. 3140 (HB).

United States District Court, S.D. New York.

June 27, 1995.

James Johnson, Maspeth, NY, pro se.

Barbara Hoey, Kelley Drye & Warren, New York City, for defendants.

BAER, District Judge:

Plaintiff brings this action under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Act"), for alleged unlawful employment termination by defendants The New York Hospital (the "Hospital"), its President, Dr. David Skinner, and its Assistant Director of Nursing, Mr. Jody Sklar. Plaintiff has made an objection to Magistrate Judge Bernikow's granting of a protective order that precludes plaintiff from deposing Dr. Skinner. The District Court can modify or set aside rulings of Magistrate Judges on nondispositive matters where the rulings are "clearly erroneous or contrary to law." Fed. R.Civ.P. 72(a). Defendants, meanwhile, seek an order dismissing the claims against the individual defendants in their individual capacities. Defendants' request has not been previously addressed by a Magistrate Judge.

For the following reasons, I grant defendants' motion to dismiss the case against Mr. Sklar in his individual capacity, but deny defendants' motion to dismiss against Dr. Skinner in his individual capacity. My ruling, by finding Dr. Skinner a proper defendant in his individual capacity, necessarily requires that plaintiff have the opportunity to depose Dr. Skinner. I therefore set aside the Magistrate's ruling as contrary to law.

## I. BACKGROUND

Plaintiff, *pro se*, a registered nurse, sues defendants under the federal Rehabilitation Act, which bans discrimination against individuals on the basis of their disability "under any program or activity receiving federal fi-

nancial assistance." 29 U.S.C. § 794(a). Plaintiff asserts that defendants' termination of his employment on August 30, 1991 was "discriminatory with respect to handicap," Compl. at 3, ¶ 9, because the termination was based on an incident that resulted from "a relapse in [his] treatment for [a]lcoholism," *id.* at 2, ¶ 8. Defendants contend that plaintiff was

> discharged as the result of an incident of severe misconduct, which involved his appearance on the premises of the Hospital in an intoxicated state, his refusal to leave the Hospital's premises when requested to do so by a Hospital security guard, and his physical assault on two Hospital security guards.

Answer at 3–4, ¶ 19. "[A]ny employee," states the Hospital, "regardless of an alleged 'disability' or 'handicap,' would be discharged after an incident of such severe misconduct." *Id.* at 4, ¶ 19. While that may be, my task here is to assure adequate discovery to both sides within the framework of the Federal Rules of Civil Procedure.

Plaintiff seeks to depose Dr. Skinner, the Hospital's President and a named defendant, while defendants move to dismiss the suit against Dr. Skinner and the other named individual defendant, Mr. Sklar, in their individual capacities. Defendants ground this motion on their contention that individuals cannot be liable under the Rehabilitation Act.

## II. DISCUSSION

■ Case law supports the proposition that individuals who are responsible for the discriminatory decisions of organizations can be personally liable under the Rehabilitation Act. In *Chaplin v. Consolidated Edison Co. of New York,* 587 F.Supp. 519, 521 (S.D.N.Y. 1984) (emphasis added) (footnote omitted), this Court addressed the issue, concluding that the Act and its regulations "can be read as requiring a showing that the discrimination took place *under* a federally funded program, but as permitting a suit against individuals responsible for discriminatory policies as well as against the entity receiving federal funds." The Court did acknowledge, however, that the question "is not free from doubt." *Id.; see also Yoder v. Gross,* Civ. No. 91–

6839, 1991 WL 237831, at *2 n. 1 (N.D.Ill. Nov. 5, 1991) (holding that a university president could be subject to liability under the Rehabilitation Act provided his "personal responsibility" were established (citing *Chaplin* )); *DiPompo v. West Point Military Academy,* 708 F.Supp. 540 (S.D.N.Y.1989) (citing *Chaplin* ).

■ The line of cases upon which defendants rely fails to counter what this Court held in *Chaplin.* In *Glanz v. Vernick,* 756 F.Supp. 632, 637 (D.Mass.1991), although the District of Massachusetts found that a doctor who was employed in a resident teaching capacity of a federally-funded hospital could not be held liable under the Act, the Court based its ruling on the fact that the doctor "clearly is not in a position to accept or reject federal assistance." The Second Department of the New York Supreme Court Appellate Division recently cited *Glanz* in *Doe v. Jamaica Hospital,* 202 A.D.2d 386, 608 N.Y.S.2d 518, 519 (App.Div.2d Dep't 1994), where it held that a physician could not be susceptible to Rehabilitation Act liability "simply because he is an employee of a Federally-funded hospital." The Court explained, "The obligations of [the Act] are imposed upon those who are in a position to accept or reject [those obligations] as a part of the decision whether or not to 'receive' Federal funds." *Id.,* 608 N.Y.S.2d at 519 (citation omitted); *see also Doe v. City of Chicago,* 883 F.Supp. 1126 (N.D.Ill.1994) (permitting a Rehabilitation Act suit against an individual in his individual capacity where he was capable of accepting or rejecting federal funds on behalf of an organization). Here, the "doctor" happens to be President of The New York Hospital and as such, he, unlike the practicing physicians in *Glanz* and *Jamaica Hospital,* plays a significant role in making that decision. Mr. Sklar, the Assistant Director of Nursing, probably does not. Hence, I grant defendants' motion only insofar as it seeks to remove Mr. Sklar as a defendant in his individual capacity. The claims against Dr. Skinner in his individual capacity survive.

■ In 1992, Congress amended the Rehabilitation Act to provide that, in employment discrimination cases alleging violations of the

Rehabilitation Act, the standards of the Americans with Disabilities Act ("ADA") would apply for the purposes of "determin[ing] whether [the Rehabilitation Act] has been violated." 29 U.S.C. § 794(d). Some courts have interpreted this language as exempting from the Rehabilitation Act's coverage those employers that are not subject to the ADA. *Romand v. Zimmerman,* 881 F.Supp. 806 (N.D.N.Y.1995); *Haltek v. Village of Park Forest,* 864 F.Supp. 802 (N.D.Ill. 1994). The ADA generally defines "employer" as only those businesses that employ more than 14 workers, and "any agent of such person." 42 U.S.C. § 12111(5)(A). Under that definition, which mirrors the language in Title VII of the Civil Rights Act of 1964, courts have split as to whether individuals can be "agents" of employers so as to be open to liability in their individual capacities. I find it unnecessary to address whether individuals are encompassed by the term "employer" in the ADA, because I conclude that Congress did not intend the ADA's definition of "employer" to restrict the previously unencumbered application of the Rehabilitation Act.

█ In enacting the 1992 amendment of the Rehabilitation Act, Congress intended that the standard of "reasonable accommodations" that employers must make under the ADA would serve as the standard in actions alleging Rehabilitation Act violations in the employer-employee context. 42 U.S.C. § 12112(b)(5)(A). This is more easily understood once we recognize that the Rehabilitation Act provides a broader prohibition than one limited to discrimination that takes place in the employment setting; in addition, the Rehabilitation Act protects those "excluded from the participation in, ... denied the benefits of, or ... subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Accordingly, the Rehabilitation Act protects, for example, students at educational institutions and patients at medical facilities, with no explicit exception for entities with less than 15 employees.

The Rehabilitation Act's application to the employment context was similarly not dependent on an entities' number of employees,

and did not become so as a result of the 1992 amendment. The language of the amendment states that the ADA's standards are to be used only "to determine whether [the Rehabilitation Act] has been violated." 29 U.S.C. § 794(d). What the amendment does not state is that the standards of the ADA are to be used to determine whether an employer is even subject to the Rehabilitation Act in the first instance.

██ This is further borne out by the ADA itself, which explains that the government authorities that enforce the Rehabilitation Act and the ADA are to "develop procedures ... that avoid[ ] duplication of effort and prevent[ ] imposition of inconsistent or conflicting standards for the same requirements." 42 U.S.C. § 12117(b). This wording is intended to prevent inconsistent obligations *when liability exists under both statutes,* and is not meant to preclude an employer from being subject to the Rehabilitation Act's coverage simply because that employer is exempt from the ADA's narrower range. This holding comports with the purpose of the ADA, which was to "expand the scope of the Rehabilitation Act's coverage beyond the federal government and to provide protection for people with disabilities throughout society[, including individuals employed by employers that do not receive federal funds]." *Vande Zande v. Wisconsin Dep't of Admin.,* 851 F.Supp. 353 (W.D.Wis.1994). In the absence of clear statutory language to the contrary, it seems unlikely that Congress expanded the Rehabilitation Act's coverage to employers that do not receive federal funds, and at the same time circumscribed the Act's coverage of federal fund recipients to those that employ more than 14 workers. Consequently, an employer can be liable under the Rehabilitation Act while exempt from liability under the ADA. And, in accordance with *Chaplin v. Consolidated Edison Co. of New York,* 587 F.Supp. 519 (S.D.N.Y.1984), individuals allegedly responsible for an entity's discriminatory policies or actions are not excluded from the Rehabilitation Act's broad swath.

█ As Dr. Skinner has been found a proper defendant, I must set aside Magistrate Bernikow's protective order that barred

plaintiff from deposing him as contrary to law.

### III. CONCLUSION

Defendants' motion to dismiss the suit against Mr. Sklar in his individual capacity is GRANTED; defendants' motion to dismiss against Dr. Skinner in his individual capacity is DENIED; and plaintiff's motion to set aside the protective order preventing him from deposing Dr. Skinner is GRANTED.

In response to the parties' joint request, the discovery deadline is extended to August 15, 1995, the motion deadline is extended to September 15, 1995, and the Joint Pre–Trial Order deadline is moved to October 13, 1995. Plaintiff must arrange to have the medical records at issue sent from his treating hospital directly to Chambers so as to be received by Chambers on or before July 10, 1995. Chambers will then review the records *in camera* before turning over the relevant portions to defendants. This case will remain on the Court's November 1995 Trailing Trial Calendar.

**SO ORDERED.**