**Thomas LANE, Plaintiff,**

v.

**MARYHAVEN CENTER OF HOPE and Mason Bryant, Defendants.**

**No. CV 96–2340 (ADS).**

United States District Court,
E.D. New York.

Nov. 2, 1996.

MEMORANDUM OF DECISION
AND ORDER

SPATT, District Judge:

This lawsuit arises out of the claims of the plaintiff, Thomas Lane ("Lane" or the "plaintiff"), that he was discriminated against by his former employer, the defendants, Maryhaven Center of Hope ("Maryhaven") and Mason Bryant ("Bryant," collectively the "defendants"), in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq., the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 et seq. and related state law. Presently before the Court is the defendants' motion to dismiss several causes of action pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The plaintiff opposes the motion, maintaining that his claims have been adequately pled.

I. *Background*

The following facts are taken from the Complaint. The plaintiff is a resident of Suffolk County. The defendant Maryhaven, a facility that cares for mentally disabled individuals, is a New York corporation with its principal place of business in Port Jefferson, New York. Bryant was Lane's supervisor at Maryhaven. Lane was employed by Maryhaven as a Direct Care Counselor from November 7, 1991 until November 2, 1994, when he was discharged.

In January 1994, the plaintiff was diagnosed as a manic depressive. According to Lane, the defendants "had actual and constructive knowledge" of his condition. Further, while Lane admits that during his employment he suffered "mild symptoms of depression," he alleges that his disability never interfered with his work.

In October 1994, Lane "entered a relapse the caused him to enter an manic state." As a result, his treating physician directed that he take one day off. The plaintiff then advised Bryant that he would need to use his accrued sick time. According to Lane, after the day off, Bryant required him to provide a physician's note documenting the absence or he would not be able to return to work. The plaintiff pleads upon information and belief that other employees who took single sick

Slavin & Steinberg, P.C., Huntington, New York by L. Susan Scelzo Slavin and Russell Karp, for Plaintiff.

Putney, Twombly, Hall & Hirson, New York City by Michael T. McGrath and Mark A. Hernandez, for Defendants.

days were not required to provide similar notes.

On October 31, 1994, Lane received authorization to take several clients of Maryhaven on a local "outing" to an unspecified location. According to the plaintiff, apparently as a result of this outing, the defendants "fabricated an incident of misconduct" which never occurred, and as a result, on November 2, 1994 Lane was discharged. The details of this "fabricated misconduct" are not set forth in the Complaint. The plaintiff alleges that pursuant to his termination, Bryant insulted him regarding his disability.

According to Lane, as a result of his discharge, he lapsed into a deep depression during which he attempted to commit suicide. He was subsequently hospitalized for approximately five to six weeks. According to Lane, at all times he performed his duties in a reasonable manner and his disability did not interfere with his responsibilities as a Direct Care Counselor. He claims that his discharge based on the undefined incident of misconduct was "false," and "fabricated" in order to terminate his employment. Lane contends that the "misconduct" charge was designed to disguise the defendants' true reason for his discharge, namely unlawful discriminatory intent based on his disability.

On May 9, 1996, Lane commenced this action in the federal district court. The Complaint alleges six causes of action for: (1) violation of the ADA; (2) violation of the Rehabilitation Act; (3) violation of the New York Executive Law § 290 et seq.; (4) intentional infliction of emotional distress; (5) defamation; and (6) apparently a claim for prima facie tort. The defendants move to dismiss the federal discrimination claims against Bryant and the common law tort claims. In response to the defendants' motion, Lane withdrew his fourth, fifth and sixth causes of action. Accordingly, the Court need only address the motion with respect to Bryant's individual liability under the ADA and Rehabilitation Act.

## II. *Discussion*

### A. *The standard*

A complaint is to be dismissed under Fed. R.Civ.P. 12(b)(6) for failure to state a claim, if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *accord Gagliardi v. Village of Pawling,* 18 F.3d 188, 191 (2d Cir.1994); *Allen v. West–Point–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). In addition, such a motion is addressed solely to the face of a pleading, and "[t]he court's function . . . is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985).

In assessing the sufficiency of a pleading on a motion to dismiss, "all factual allegations in the complaint must be taken as true," *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991), and all reasonable inferences must be construed in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied sub nom., Soifer v. Bankers Trust Co.,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is also mindful that under the modern rules of pleading, the plaintiff need only aver "a short and plain statement showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f).

### B. *The defendants' motion*

#### 1. *The ADA claims*

##### a. *Individual liability under ADA*

■ Initially, the defendants move to dismiss the plaintiff's ADA claims against Bryant arguing that the ADA does not provide for individual liability. Any analysis of individual liability for discriminatory employment practices begins with the Second Circuit decision, *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2d Cir.1995). In *Tomka,* a divided panel held "that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII, . . . [although] [u]nder the HRL [New York Human Rights Law], the individual defendants

may be sued in their personal capacities." *Id.* at 1313.

The court began its analysis with the language of the statute, which, like the ADA, defines the term employer as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person." 42 U.S.C. § 2000e(b) (Title VII definition of "employer"), § 12111(5)(A) (ADA definition of "employer"). Although the court recognized that in general, the plain meaning of the statute would govern, which in this case would require a finding that the law permits individual liability, Title VII presents the "'rare case'" where the "'literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Id.* at 1313–14, quoting, *Samuels, Kramer & Co. v. C.I.R.*, 930 F.2d 975, 979 (2d Cir.), *cert. denied,* 502 U.S. 957, 112 S.Ct. 416, 116 L.Ed.2d 436 (1991). In such cases, the intent of the legislators, rather than the language of the statute controls. *Id.* at 1314.

According to the Second Circuit the "agent clause" is part of a sentence limiting liability to employers with fifteen or more employees. This restriction was imposed to avoid imposition of liability on small employers. *Id.,* citing, 110 Cong.Rec.S. 13092 (1964) (Remarks of Sen. Cotton); 110 Cong.Rec.S. 13088 (Remarks of Sen. Humphrey); 110 Cong.Rec.S. 13092–93 (1964) (Remarks of Sen. Morse) (addressing the costs of compliance on employers with less than 15 employees). As a result, it is inconceivable that Congress would protect small employers but simultaneously permit liability against individual employees, especially given that nowhere did the floor debates address agent liability under the statutory definition of the term "employer." *See id.*

Further, the court relied upon Title VII's remedial provisions. For example, prior to the enactment of the Civil Rights Act of 1991, a Title VII plaintiff was limited to back pay and reinstatement which are essentially equitable remedies most appropriately provided by employers. *Id.* Also, the addition of compensatory and punitive damages under the Civil Rights Act of 1991 was "calibrated" to the size of the employer without repealing the exemption for employers with less than 15 employees. There is no similar limitation for agents of employers. *Id.* at 1315.

Finally, the practical implications of individual liability could lead to anomalous results leaving the individual bearing the brunt of Title VII judgment. The court noted by way of illustration, that where an employer-entity filed for bankruptcy, the agent may be the only one exposed to liability. Alternatively, if a plaintiff settled against the employer, he or she could still be free to pursue the agent. *Id.* at 1315–16.

In reaching this conclusion, the majority rejected the dissent's reasoning that precluding individual liability would render the "agent clause" mere "surplusage." *Id.* at 1316. According to the majority opinion, the purpose of the "agent clause" was to expressly include the doctrine of respondeat superior as a basis for employer liability rather than an independent ground for individuals. *Id.; but see* Janis R. Franke, *Does Title VII Contemplate Personal Liability for Employee/Agent Defendants?* 12 HOFSTRA LAB. L.J. 39 (1994) (addressing arguments regarding individual liability under Title VII and advocating individual liability).

Although the Second Circuit has not addressed the issue of individual liability in the context of the ADA, those circuit courts that have, reached a similar conclusion to *Tomka. See Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996) (rejecting individual liability under the ADA and finding that the purpose of the "agent" clause is to incorporate the doctrine of respondeat superior into the ADA); *EEOC v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1280–82 (7th Cir. 1995) (same); *see also Lenhardt v. Basic Inst. Of Tech.,* 55 F.3d 377, 381 (8th Cir.1995) (holding that a Missouri statute similar to the ADA does not provide for individual liability). Similarly, district courts within the Second Circuit to consider the issue have concluded that there is no cause of action under the ADA against an individual as an agent of his or her employer. *See Cerrato v. Durham,* 941 F.Supp. 388 (S.D.N.Y.1996); *Yaba v. Cadwalader, Wickersham & Taft,* 931 F.Supp. 271 (S.D.N.Y.1996); *Ryan v. Grae & Rybicki, P.C.,* 1995 WL 170095 (E.D.N.Y.

1995); *Leykis v. NYP Holdings, Inc.*, 899 F.Supp. 986 (E.D.N.Y.1995) (finding no individual liability but permitting naming of individual defendants in their representative capacities as discussed below); *Altman v. N.Y.C. Health & Hosp. Corp.*, 903 F.Supp. 503 (S.D.N.Y.1995); *Jones v. Inter–County Imaging Ctrs.*, 889 F.Supp. 741 (S.D.N.Y. 1995); *but see Iacampo v. Hasbro, Inc.*, 929 F.Supp. 562 (D.R.I.1996) (giving the ADA definition of the term "employer" its plain meaning and finding that the statute provides for individual liability); *Bishop v. Okidata, Inc.*, 864 F.Supp. 416 (D.N.J.1994) (same); *Doe v. William Shapiro, Esq.*, 852 F.Supp. 1246 (E.D.Pa.1994) (same).

Relying on this precedent in the Second Circuit, the Court finds that there is no cause of action against a supervisor, individually, for discriminatory employment practices in violation of the ADA. As the Second Circuit reasoned in *Tomka*, and other courts have concluded in the context of the ADA, *see, e.g., AIC Security Investigations*, it would be incongruous for Congress to limit liability to employers with more than fifteen employees but impose liability upon individual employees, even when considering the plain meaning of the definition of the term employer under the statute. Further, the Court declines the plaintiff's invitation to draw a distinction between *Tomka* and this case based on the fact that the ADA rather than Title VII is being invoked. Both statutes employ identical language to define the term "employer." Accordingly, giving the term different meanings depending upon the type of discrimination, in effect creating a hierarchy of discrimination, would be unreasonable. As a result, the Court finds as a matter of law that the ADA does not provide for a cause of action against an employer's individual agents or employees.

### b. *Representative liability*

■ The plaintiff argues in the alternative, that if the Court determines that the ADA does not provide for individual liability, that defendant Bryant should nevertheless continue in this lawsuit as a named defendant in his "representative capacity." As Lane, correctly recognizes, the Second Circuit has yet to rule on this issue. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 n. 2 (2d Cir.1995). The district courts in New York to consider the question are divided. *See Abdullajeva v. Club Quarters, Inc.*, No. 96 Civ 0383, 1996 WL 497029 (S.D.N.Y.1996), *comparing, Coraggio v. Time Inc. Magazine Co.*, 94 Civ. 5429, 1995 WL 242047 at *8 (S.D.N.Y.1995) (individuals may be held liable for discrimination in violation of Title VII in their official capacities); *Leykis v. NYP Holdings, Inc.*, 899 F.Supp. 986, 991 (E.D.N.Y.1995) ("such liability gains advantages in discovery, in ultimate liability of the [employer], and, of course, in the personal satisfaction of calling upon the alleged wrongdoer to publicly answer the accusations levied against him") *with Bakal v. Ambassador Constr.*, No. 94 Civ. 584, 1995 WL 447784 at *3 (S.D.N.Y.1995) (holding that there is no representative liability under Title VII); *Yaba v. Cadwalader, Wickersham & Taft*, 896 F.Supp. 352, 354 n. 1 (S.D.N.Y.1995) (following *Bakal* ); *Bonner v. Guccione*, 916 F.Supp. 271, 279 (S.D.N.Y.1996) (same).

In support of his position, the plaintiff relies on the reasoning set forth in *Coraggio*:

It is not anomalous to permit individuals to be named as defendants, even though no judgment can be collected from them. I decline to follow the reasoning in *Bramesco v. Drug Computer Consultants*, 834 F.Supp. 120, 123 (S.D.N.Y.1993), that if the claims levied against an individual are also chargeable to the employer, "plaintiff gains nothing apart from consumption of time and creation of bitterness by inclusion of the individual as a defendant." Both tangible and intangible benefits accrue to plaintiffs who name individual wrongdoers as defendants. The Federal Rules of Civil Procedure ("Rules"), for example, facilitate discovery against parties by requiring them to produce on notice relevant documents in their possession, whereas documents possessed by non-parties must be obtained by subpoena. *Compare* Fed. R.Civ.P. 34 *with* Fed.R.Civ.P. 45. As is apparent from the Rules, the same is true for depositions; a party can be deposed on notice, whereas the deposition of a non-party witness may have to be compelled by subpoena. *See* Fed.R.Civ.P. 30. More-

over, if only employers could be named as Title VII defendants, those employees who allegedly committed discriminatory acts would escape public accountability, while those who played no part in the purported discrimination are unnecessarily stigmatized. In this respect, the employer-only approach is under-inclusive and over-inclusive. By contrast, naming individuals as defendants identifies the alleged wrongdoers, forcing them to answer for their acts publicly, even if they do not have to answer for them financially. If they are vindicated, their names are cleared.

*Coraggio,* 1995 WL 242047 at *8. Notwithstanding the surface appeal of this reasoning, the Court believes that *Coraggio* focuses on the wrong point. As Judge Cote recently stated in *Bonner:*

> "The 'ultimate issue is whether Congress intended to create a private cause of action.'" *Karahalios v. National Federation of Federal Employees,* 489 U.S. 527, 532, 109 S.Ct. 1282, 1286, 103 L.Ed.2d 539 (1989) (quoting *California v. Sierra Club,* 451 U.S. 287, 293, 101 S.Ct. 1775, 1778, 68 L.Ed.2d 101 (1981)). Where a statute expressly provides a remedy, "courts must be especially reluctant to provide additional remedies." *Id.,* 489 U.S. at 533, 109 S.Ct. at 1287. This is so because " '[i]n the absence of strong indicia of contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.'" *Id.* (Quoting *Middlesex County Sewerage Authority v. Sea Clammers,* 453 U.S. 1, 15, 101 S.Ct. 2615, 2624, 69 L.Ed.2d 435 (1981)). The Court can find no evidence of Congressional intent to support the *Coraggio* Court's holding; in fact, the *Tomka* decision militates against the crafting of a private action against employees acting in their "official" capacity. As the District Court in *Bakal v. Ambassador Construction* put it, the problem with the holding in *Coraggio,* especially in the light of the *Tomka* decision, is that

> > [t]he function of the courts … is to provide a remedy against those that Congress has determined should be held liable for the plaintiff's damages, not to affix moral blame. If Congress has

made a determination that individual employees should not be personally liable for acts of discrimination, it is not for the courts to second guess that judgment and provide some type of moral sanction against those who engaged in prohibited conduct.

*Bakal,* 1995 WL 447784 at *3 (S.D.N.Y. July 28, 1995). *See also Yaba v. Cadwalader, Wickersham & Taft,* 896 F.Supp. 352, 354 n. 1 (S.D.N.Y.1995) (no "official" capacity Title VII liability, because "Congress has not authorized it").

*Bonner,* 916 F.Supp. at 279.

As Judge Cote aptly recognized, and this Court agrees, there is no cause of action for employment discrimination under Title VII, or in this case the ADA and Rehabilitations Acts, against a supervisor individually. Further, there is no distinction made in Title VII or the ADA or Rehabilitation Act for lawsuits brought against other employees in their official capacities, as opposed to lawsuits brought against those employees in their individual capacities. Accordingly, the Court declines to impose such a distinction in order to provide some type of "moral sanction" where no other cause of action exists, and Lane's alternative request that his ADA claim survive against Bryant in his official capacity is denied.

### c. Alter ego

▆▆▆ Finally, Lane contends that the ADA allegations against Bryant contained in the Complaint "are consistent with a finding of individual liability on the ground that the individual defendant was the 'alter ego' of the employer." To plead a claim for individual liability under the alter ego doctrine, two essential elements must be plead: (1) that the person exercises such dominion and control with respect to the transaction attacked that the corporation had no separate will of its own; and (2) that the domination and control was used to commit a fraud or wrong against the plaintiff which proximately caused the plaintiff's injuries. *Leykis,* 899 F.Supp. at 991, citing, *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988); *Zinaman v. USTS New*

*York Inc.,* 798 F.Supp. 128, 131 (S.D.N.Y. 1992).

Applying this standard, the Court finds that the Complaint fails to allege a claim for individual liability against Bryant under the alter ego doctrine. There are no allegations that Bryant asserted dominion or control over Maryhaven, or any facts that would support such an inference. Accordingly, Lane's request that the Court maintain his ADA claim against Bryant on the basis of the alter ego doctrine is denied, and the defendants' motion to dismiss the ADA allegations against Bryant, pursuant to Fed.R.Civ.P. 12(b)(6), is granted.

### 2. *Rehabilitation Act claims*

■ The final issue before the Court is whether Lane's allegations against Bryant under the Rehabilitation Act are viable. As with the ADA, the Second Circuit has not determined whether a claim for individual liability may be maintained under the Rehabilitation Act, and as with the cases regarding representative liability, the district courts are again divided.

The Rehabilitation Act provides that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act...." 29 U.S.C. § 794(d). Some district courts have determined that under section 794(d) "[t]he definition of "employers" found in the ADA is also applicable to the Rehabilitation Act." *Romand v. Zimmerman,* 881 F.Supp. 806, 812 (N.D.N.Y.1995); *Haltek v. Village of Park Forest,* 864 F.Supp. 802, 803 (N.D.Ill.1994). According to these courts, because the ADA does not provide for individual liability, neither does the Rehabilitation Act. *Romand,* 881 F.Supp. at 812; *Haltek,* 864 F.Supp. at 803–05. As Judge McAvoy reasoned in *Romand:*

> it would appear to be unsound policy to allow claims against persons in their individual capacities under these statutes [the ADA and Rehabilitation Act] while not allowing them under Title VII. Since the definition of "employers" is analogous in each of the these acts, it follows that if this court [and now the Second Circuit] finds

that the naming of individuals in Title VII actions can only be used to underscore the principle that employers have respondeat superior liability for the discriminatory acts of their agent employees, no additional liability may be attached under the ADA and Rehabilitation Act.

*Romand,* 881 F.Supp. at 812.

On the other hand, in *Johnson v. New York Hosp.,* 897 F.Supp. 83 (S.D.N.Y.1995), the trial court reached a somewhat different conclusion. In *Johnson,* the plaintiff alleged that she was discharged in violation of both the ADA and Rehabilitation Act and filed suit against her employer—the hospital, the hospital's president, Dr. David Skinner, and the assistant director of nursing, Jody Sklar. The court granted the motion to dismiss the claims against Sklar, but denied the motion against Skinner. In reaching this conclusion, Judge Baer recognized that the Rehabilitation Act prohibits discrimination under programs receiving federal financial assistance. *Id.* at 84–85. Further, "the obligations of the [the Act] are imposed upon those [individuals] who are in a position to accept or reject [those obligations] as part of the decision whether or not to 'receive' Federal Funds. *Id.,* citing, *Doe v. Jamaica Hosp.,* 202 A.D.2d 386, 608 N.Y.S.2d 518, 519 (2d Dep't 1994); *Doe v. City of Chicago,* 883 F.Supp. 1126 (N.D.Ill.1994). Based on this interpretation of the Rehabilitation Act, the court denied the motion to dismiss as to Dr. Skinner because, as the president of the hospital, he "plays a significant role" in deciding whether to accept federal funds. The motion was granted however, with respect to Sklar, who as assistant director of nursing, did not have similar responsibilities.

Assuming that this holding were correct only for the purpose of this analysis, it would still not save Lane's claims under the Rehabilitation Act against Bryant. Under *Johnson,* individual liability is possible, only where the individual was responsible for the decision to receive federal funds. Here, there are no allegations that Bryant was responsible for such decisions, and his role as Lane's immediate supervisor implies that he is not. Accordingly, under *Johnson,* Bryant's role seems more analogous to that

of Sklar, the assistant director of nursing, than Skinner, the hospital president. As a result, under *Johnson* or *Romand,* the claims under the Rehabilitation Act against Bryant individually must be dismissed.

In reaching this decision, the Court notes that in *Chaplin v. Consolidated Edison Co.,* 587 F.Supp. 519 (S.D.N.Y.1984), the district court held that an individual employee may be held liable under the Rehabilitation Act without addressing the role of that employee in the decision to accept federal funds. Although Judge Baer cited *Chaplin,* he did not apply its holding in drawing the distinction between the decisionmaking responsibilities of certain employees. Suffice it to say, that because the *Chaplin* court reached its determination before the 1992 amendment to the Rehabilitation Act incorporating the ADA standards, before the enactment of the ADA, and before *Tomka* was decided, it will not serve as precedent in this case.

III. *Conclusion*

Having reviewed the submissions of both parties, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the defendants' motion to dismiss the claims under the ADA and the Rehabilitation Act against the defendant Mason Bryant, pursuant to Fed.R.Civ.P. 12(b)(6), is granted; and it is further

ORDERED, that the plaintiff's New York common law claims are withdrawn with the consent of the parties.

SO ORDERED.