Stewart CODDINGTON, Plaintiff,

v.

**ADELPHI UNIVERSITY, Adelphi University Board of Trustees, James A. Norton, individually and as President of Adelphi University, and Matthew Goldstein, individually and as President of Adelphi University and Caryle G. Wolahan, individually and as Dean of the Adelphi School of Nursing and Carol A. Lomanno, individually and as Associate Professor of the Adelphi School of Nursing, Defendants.**

No. CV 98–5146.

United States District Court,
E.D. New York.

March 29, 1999.

Leon & Deffet, Hauppauge, New York, by Michael E. Deffet, for plaintiff.

Bennett, Rice & Schure, LLP, Rockville Centre, New York, by Kevin P. McDonough, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff commenced this case alleging discrimination based upon his learning disabilities while a student at the School of Nursing at Adelphi University ("Adelphi"). Named as Defendants are Adelphi University ("Adelphi" or the "University"), the Adelphi University Board of Trustees ("Trustees"), James A. Norton, the former acting president of Adelphi University ("Norton"), Dr. Matthew Goldstein, the current President of Adelphi University ("Goldstein"), Caryle G. Wolahan, the Dean of the Adelphi School of Nursing ("Wolahan") and Carol A. Lomanno, an associate professor at the Adelphi School of Nursing ("Lomanno").[1] Defendants Goldstein, Norton, Wolahan, Lomanno and the Trustees are named in their individual and official capacities.

## BACKGROUND

### I.  *The Allegations Of The Complaint*

Plaintiff's amended complaint sets forth four separate causes of action against the University, the Trustees and defendants Norton, Goldstein and Wolahan. Specifically, each of these defendants is alleged to have violated: (1) the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA"); (2) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. (the "Rehabilitation Act"); (3) the New York Education Law and, (4) a contract between defendants and plaintiff. Against defendant Lomanno, plaintiff alleges three causes of action. Lomanno is alleged to have violated: (1) the ADA; (2)

the Rehabilitation Act and, (3) the New York Education Law. Lomanno is the sole defendant who is not alleged to have breached a contract with plaintiff.

### II.  *Defendants' Motion*

Presently before the court are the motions of defendants Norton, Goldstein, Wolahan, Lomanno and the Trustees (the "Individual Defendants"), to dismiss the complaint on various grounds. First, all Individual Defendants seek dismissal of the complaint on the ground that individuals cannot be held personally liable under the ADA or the Rehabilitation Act. Second, all Individual Defendants seek dismissal of the breach of contract claims on the ground that no contractual relationship between plaintiff and defendants either exists or has been pleaded. Third, all Individual Defendants seek dismissal of any claim brought pursuant to the New York State Education Law on the ground that plaintiff has pleaded no specific violation of any provision of that law or facts in support thereof. Fourth, the Trustees seek dismissal of the state law claims on the ground that the Trustees are immune from liability under section 720–a of the New York Not–For–Profit Corporation Law. Finally, defendants Norton and Goldstein seek dismissal of all claims on the ground that they have never been properly served with process. The court considers each motion below.

## DISCUSSION

### I.  *Standard of Review*

Defendants' motions are made in the context of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss is properly granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S.

1.  Plaintiff's original complaint named neither Adelphi University nor Dr. Matthew Goldstein as defendants. These defendants were subsequently named in plaintiff's amended complaint.

41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Harsco v. Segui*, 91 F.3d 337, 341 (2d Cir.1996); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). When considering a motion to dismiss for failure to state a claim, the court can consider only the facts as set forth in the complaint or documents attached thereto. When considering the facts pled, the court must accept as true all factual allegations in the complaint. All reasonable inferences must be drawn in favor of the non-moving party. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 62 (2d Cir.1997). A complaint should not be dismissed "simply because a plaintiff is unlikely to succeed on the merits." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). With these principles in mind, the court turns to defendants' motions.

## II. *The Motions To Dismiss*

### A. *Individual Liability Under the ADA and the Rehabilitation Act*

#### i. *Legal Principles*

All Individual Defendants move to dismiss the ADA and Rehabilitation Act claims on the ground that individuals cannot be held personally liable under these statutes. In support of their argument for dismissal, defendants rely on *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir.1995), wherein the Second Circuit held that individual employees cannot be held personally liable as "employers" under Title VII of the Civil Rights Act. *See Tomka*, 66 F.3d at 1313. The Second Circuit in *Tomka* interpreted the term "employer," under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"). That statute defines "employer" as "a person … who has fifteen or more employees … and any agent of such a person." 42 U.S.C. § 2000e(b).

In *Tomka*, the Second Circuit rejected the notion that the "and any such agent" clause of the definition of employer was intended to impose individual liability upon all agents of employers. Instead, the court interpreted this clause as establishing respondeat superior liability for the actions of agents. The court reasoned that when Congress limited Title VII liability to employers with fifteen or more employees, it intended to shield individuals from liability. It would be anomalous, then, to allow for individual liability under title VII. *Id.* at 1313–1314.

Courts interpreting employment discrimination cases brought pursuant to the ADA have looked to *Tomka* to decide whether individual liability exists under the ADA. In this circuit, *Tomka*'s analysis has been applied consistently to hold that there is no individual liability for employment discrimination under the ADA. *See, e.g., Corr v. MTA Long Island Bus*, 27 F.Supp.2d 359, 369–70 (E.D.N.Y.1998); *Harrison v. Indosuez*, 6 F.Supp.2d 224, 229 (S.D.N.Y.1998); *Lane v. Maryhaven Center of Hope*, 944 F.Supp. 158, 160–162 (E.D.N.Y.1996); *Cerrato v. Durham*, 941 F.Supp. 388 (S.D.N.Y.1996); *Yaba v. Cadwalader, Wickersham & Taft*, 931 F.Supp. 271 (S.D.N.Y.1996).

Denying claims for individual liability under the ADA, the foregoing courts rely on the fact that the statutory definitions of the term "employer" are the same under Title VII as under the ADA. *Compare* 42 U.S.C. § 2000e(b) *with* 42 U.S.C. § 12111(5)(A). This, coupled with the fact that courts apply similar standards and reasoning to discrimination cases brought pursuant to these two statutes, *see, e.g., EEOC v. Amego, Inc.*, 110 F.3d 135, 145 n. 7 (1st Cir.1997); *AIC Security Investigations, Ltd.* 55 F.3d at 1280; *Corr*, 27 F.Supp.2d at 370 n. 8, has led to the overwhelming weight of authority applying *Tomka* to dismiss claims of employment discrimination seeking to hold individuals personally liable under the ADA.

Applying the same analysis, it has been similarly held that individual liability for employment discrimination does not exist under the Rehabilitation Act. *See Meling v. St. Francis College*, 3 F.Supp.2d 267,

275–76 (E.D.N.Y.1997); *Romand v. Zimmerman*, 881 F.Supp. 806, 812 (N.D.N.Y. 1995); *Lane*, 944 F.Supp. at 162; *but see Lee v. Trustees of Dartmouth College*, 958 F.Supp. 37, 45 (D.N.H.1997) (individuals may be personally liable under Rehabilitation Act if in a position to accept or reject federal funds).

This is not a case alleging employment discrimination in violation of Title I of the ADA, but instead, is brought pursuant to Title III of the ADA—the same statute construed in ADA employment discrimination cases applying *Tomka*, but a different section of that statute.

Actions brought pursuant to Title III of the ADA seek recovery on behalf of disabled individuals who allege discrimination, not in the terms of their employment, but in places of "public accommodation." Under Title III of the ADA, liability may be imposed on those who "own" "lease" or "operate" places of public accommodation. As codified, 42 U.S.C. § 12182(a) provides, in pertinent part as follows:

> "no individual shall be discriminated against on the basis of a disability in the full enjoyment of the goods, services … or privileges of any place of public accommodation *by any person who owns, leases … or operates a place of public accommodation.*"

42 U.S.C. § 12182(a) (emphasis added).

While the ADA refers to a "person" who owns, leases or operates a place of public accommodation as potentially liable for acts of discrimination, the relevant regulation broadens this term to refer to "private entities." Thus, the regulation implementing the statute states that no individual shall be discriminated against in the enjoyment of the facilities of public accommodations "by any *private entity* who owns, leases … or operates a place of public accommodation." 28 C.F.R. § 36.201(a), subpart B (emphasis added). "Private entity" is defined in the regulations to include persons as well as "an entity other than a public entity." 28 C.F.R. § 36.104, subpart A. The regulations define "place of public accommodation" as a "facility operated by a private entity" whose operations fall into one of the categories set forth as public accommodations in the ADA. 28 C.F.R. § 36.104, subpart A.

■ When read together, the statute and the regulation impose liability on the entity (which includes a "person") that "owns" "operates" or "leases" the public accommodation. Thus, the question of whether a person is a proper defendant under the ADA turns not on whether the defendant is a person, partnership, corporation or other entity but, instead, whether the defendant *owns, leases* or *operates* a place of public accommodation within the meaning of the ADA.

Courts considering individual liability under the ADA have focused on the issue of control and whether the named defendant "operates" a place of public accommodation within the meaning of the ADA. The term "operate" has been interpreted as being in a position of authority and having the power and discretion to perform potentially discriminatory acts. Such discriminatory acts may result in the imposition of liability under the ADA where they are the result of the exercise of the individual's own discretion, and not merely the implementation of institutional policies or the mandates of superiors. *Guckenberger v. Boston University*, 957 F.Supp. 306, 323 (D.Mass.1997), (quoting *Howe v. Hull*, 874 F.Supp. 779, 788 (N.D.Ohio 1994)).

Applying the "control" test, courts have been reluctant to hold individual employees who are not policy makers liable under the ADA. In *Aikins v. St. Helena Hospital*, 843 F.Supp. 1329, 1335 (N.D.Ca.1994), plaintiff alleged that a hospital and the treating physician violated the ADA. The court dismissed the ADA claim brought against the individual physician on the ground that he lacked the power to control hospital policy. *Accord Doe v. Montgomery Hospital*, Civ.A. 95–3168, 1996 WL 745524 (E.D.Pa. December 23, 1996) (dismissing ADA claim against emergency

room nurse and physician's assistant because neither had authority to control the actions or shape the policies of the defendant hospital).

On the other hand, in *United States v. Morvant,* 843 F.Supp. 1092 (E.D.La.1994), the court held that an individual dentist could be liable for an ADA violation, despite the operation of his practice in the form of a professional corporation. There, however, the defendant was the sole owner, director and president of the corporation and was charged directly with refusing treatment in violation of the ADA. *Id.* at 1093–1095.

In *Simenson v. Hoffman,* No. 95 C 1401, 1995 WL 631804 (N.D.Ill. October 24, 1995), the court dismissed an ADA claim brought against a physician-employee. There, in addition to dismissing the individual from the lawsuit, the court held broadly that the public accommodations section of the ADA does not impose personal liability. Relying on the Seventh Circuit's refusal to impose personal liability under the employment discrimination provision of the ADA, *see EEOC v. AIC Security Investigations, Inc.,* 55 F.3d 1276, 1279 (7th Cir.1995), the court stated that it was "unlikely that Congress would impose individual liability under Title III, when it declined to do so under Title I of the ADA." *Simenson,* 1995 WL 631804 at *3.

Cases decided outside of the health care field have also focused on the question of whether the defendant is an operator of a public accommodation so as to be held liable under the ADA. *See, e.g., Neff v. American Dairy Queen Corp.,* 58 F.3d 1063 (5th Cir.1995) (refusing to find a franchisor liable under the ADA as an operator of an individual franchised restaurant); *see also Bowers v. National Collegiate Athletic Ass'n,* 9 F.Supp.2d 460, 485–88 (D.N.J. 1998) (National Collegiate Athletic Association may be liable as an operator of a public accommodation within the meaning of the ADA).

In the context of a lawsuit brought against a university (a place of public accommodation under the ADA, *see* 42 U.S.C. § 12181(7)(J)), a president of a university has been held to "operate" the institution for purposes of the ADA, while an "assistant" to the president has not been so held. *Guckenberger v. Boston University,* 957 F.Supp. 306, 323 (D.Mass. 1997). In *Guckenberger,* however, the university president was named only in his official capacity. Thus, personal liability was not imposed.

■ As the aforementioned cases make clear, an individual defendant may be characterized as the owner or operator of a public accommodation under the ADA. This holding, however, should not lead to a blanket decision that personal liability exists under the ADA. The court notes that with the exception of *Guckenberger,* which allowed plaintiff to proceed against a university as well as its president (albeit only in his official capacity), courts deciding ADA public accommodations cases have applied an analysis aimed at identifying the proper party to be sued, and not at whether more than one individual can be held personally responsible for ADA violations.

Thus, in *Aikins,* the court rejected individual liability but held the hospital responsible for the alleged ADA violation. In *Morvant,* individual liability was imposed, but there, the individual at issue was held to be the only proper defendant. *Simenson* dismissed the individual defendant because he did not control the public accommodation and also held that the ADA does not impose personal liability.

The common thread running through these cases is the search for identification of the proper defendant. Merely holding that an individual is the proper defendant in an ADA public accommodations lawsuit, however, is not tantamount to holding that there is personal liability. It stands merely for the proposition that an individual may be the proper entity to name as a defendant in a particular lawsuit.

### ii The Individual Defendants' Motion

■ As noted above, the Second Circuit decision in *Tomka* was not a public accommodations case, but arose in the context of an employer-employee relationship. Nonetheless, the court finds *Tomka*'s analysis persuasive. In *Tomka*, the Second Circuit referred to a Congressional intent to shield small businesses from liability. *See Tomka*, 66 F.3d at 1313–14. Definitions of public accommodations subject to the ADA evidence a similar intent. *See* 42 U.S.C. § 12181(7). Thus, when defining places of lodging subject to the ADA, Congress limited the reach of the statute to those establishments located within a building that contains at least five rooms for rent which are not actually occupied by the proprietor of the establishment as his residence. Thus, in the public accommodations section of the ADA, as in the employment discrimination section, Congress has evidenced an intent to exclude individual liability.

As noted above, courts seeking to identify the proper defendant in the public accommodations context appear to focus on identification of the proper defendant. This is consistent with the statute's identification of those who "own" "operate" or "lease" a public accommodation as potential defendants. In so defining the proper defendant, Congress has identified individuals who have the power to facilitate any necessary accommodation.

■ Where, as here, plaintiff seeks relief based upon discrimination allegedly practiced by an educational institution, it is the institution that has the power to make any accommodations required by law. Therefore, it is the institution that operates the place of public accommodation and is, thus, the proper defendant. Even assuming, as plaintiff alleges, that the Individual Defendants were responsible for making decisions regarding disabled students and plaintiff in particular, and further assuming that such actions may be attributed to the University, these facts do not require a holding that personal liability

follows. It is difficult to believe that Congress intended to impose personal liability upon every person that has made a decision regarding plaintiff's education.

The court declines to impose personal liability even if the cooperation of the Individual Defendants is necessary to ensure compliance with the ADA and the Rehabilitation Act. As employees of the University, the individuals named herein may be called upon to implement any order entered against the University with regard to the plaintiff's needs. It is the view of the court, however, that this should not work to subject these or any other individuals to personal liability.

Relying on the clear application of *Tomka* to the employment discrimination provision of the ADA and the fact that it is unlikely that Congress would impose personal liability for the violation of one section of the ADA, while rejecting such liability under another section of the same statute, the court holds that the Individual Defendants may not be held personally liable under either the ADA or the Rehabilitation Act. *Accord Simenson*, 1995 WL 631804 at *3; *see also Montez v. Romer*, 32 F.Supp.2d 1235, 1240 (D.Colo.1999) (relying on ADA Title I and Title VII employment discrimination cases when refusing to impose personal liability under Title II of the ADA).

■ The court further holds that it is not necessary to allow plaintiff to pursue his claims against the Individual Defendants in their "official" capacities. Official capacity lawsuits are appropriate in cases involving the naming of government officials. Where, as here, there is a private entity to name, there is no reason to allow a plaintiff to proceed against an individual in his "official capacity." *Bakal v. Ambassador Construction*, 94 Civ. 584, 1995 WL 447784 at *4 (S.D.N.Y. July 28, 1995) (refusing to allow official capacity lawsuit against individuals who could not otherwise be named in Title VII litigation); *accord Harrison v. Indosuez*, 6 F.Supp.2d

224, 229 (S.D.N.Y.1998) (refusing to allow official capacity lawsuit in case alleging ADA and Title VII violations); *Lane v. Maryhaven Center of Hope,* 944 F.Supp. 158, 162–63 (E.D.N.Y.1996) (declining to impose official capacity liability as some type of "moral sanction" in case alleging violations of ADA and Title VII); *Gray v. Shearson Lehman Brothers, Inc.,* 947 F.Supp. 132, 136 (S.D.N.Y.1996) (same).

For the foregoing reasons, the Individual Defendants' motion for summary judgment on the ADA and Rehabilitation Act claims is granted.

### B. *State Law Claims*

Plaintiff seeks to assert two state law claims—breach of contract and violation of the New York State Education Law. Specifically, plaintiff alleges that all defendants, with the exception of defendant Lomanno, have breached a contract with plaintiff. All defendants are charged with violating the New York State Education Law.

### i. *Breach of Contract Claims*

Defendants seek dismissal of the breach of contract claims on the ground that plaintiff has failed to allege facts sufficient to support this cause of action. Defendants argue that the only allegation regarding a contract appears in paragraph 52 wherein it is stated that "[d]efendants have failed to provide the educational services promised when it entered into a contract with Plaintiff." Amended Complaint ¶ 52. Plaintiff counters that paragraphs 9 and 10 of the amended complaint evidence the contractual relationship entered into between plaintiff and defendants and that paragraphs 11 through 52 further define the nature of the contract as well as the nature of the breach.

Paragraph 9 of the amended complaint states that in the Fall of 1994, plaintiff enrolled, paid for and began attending Adelphi. That paragraph further states that plaintiff's enrollment began after his review of admission bulletins and other materials regarding Adelphi's programs and policies regarding students with learning disabilities. Amended Complaint ¶ 9. Paragraph 10 of the amended complaint refers to Adelphi "employees and agents" informing plaintiff that, as a learning disabled student, he would be allowed to take untimed tests and would be provided with note takers in his courses. Amended Complaint ¶ 10.

Paragraphs 11–52 of the amended complaint outline, in detail, plaintiff's experiences at Adelphi and the alleged acts of discrimination. While the great majority of plaintiff's factual allegations refer only to "defendants" as a group, plaintiff states that none of the academic accommodations due plaintiff were arranged for or provided by defendants Adelphi, Norton, Goldstein, Wolahan and Lomanno. Amended Complaint ¶ 38.

To state a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of an agreement between plaintiff and defendant; (2) adequate performance of the contract by plaintiff; (3) breach of contract by defendants, and (4) damages. *Reuben H. Donnelley Corp. v. Mark I Marketing Corp.,* 893 F.Supp. 285, 290 (S.D.N.Y.1995). Under the relaxed pleading requirements applicable in federal court, a plaintiff need not allege separately each element. Instead, it is enough that plaintiff comply with the requirement that the pleading put defendant on notice of the grounds for which plaintiff seeks relief. FRCP 8(a)(2); *see Harsco v. Segui,* 91 F.3d 337, 348 (2d Cir.1996).

Here, defendants argue that plaintiff has not sufficiently pled the existence of a contract. The existence of a contract is premised upon the presence of consideration, *i.e.,* either a benefit to the promisor or a detriment to the promisee. *Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 196–97, 443 N.E.2d 441 (1982). Upon review of the allegations of the complaint the court holds that plain-

tiff's complaint sufficiently pleads the existence of a contractual agreement—but only between plaintiff and Adelphi University and not between plaintiff and any Individual Defendant.

Plaintiff's description of a contractual relationship appears in paragraph 9 of the amended complaint wherein he describes his reliance on the bulletins and other materials published by Adelphi and his payment of fees to attend Adelphi. Under New York law, materials such as those described in plaintiff's amended complaint may be relied upon to establish the terms of a contractual relationship. *See Weiner,* 457 N.Y.S.2d at 197–98, 443 N.E.2d 441. Applying New York law and the liberal pleading requirements of the Federal Rules of Civil Procedure to plaintiff's factual allegations, the court holds that plaintiff has sufficiently pleaded a claim for breach of contract against Adelphi University.

■ Even applying liberal Federal pleading requirements, however, the court holds that plaintiff has not pleaded the existence or breach of a contract between plaintiffs and any of the Individual Defendants. Plaintiff nowhere pleads the terms of any contract between any defendant and nowhere pleads the breach of any agreement. Moreover, plaintiff pleads only the payment of consideration to Adelphi University and pleads no consideration paid to any defendant in furtherance of a contract entered into between plaintiff and any other defendant. Under these circumstances, the court grants the Individual Defendants' motions to dismiss the breach of contract claims. *Accord Guckenberger,* 957 F.Supp. at 316–17; 324–25 (plaintiff held to state a claim for breach of contract against Boston University based upon failure to fulfill terms of promotional materials aimed at learning disabled students but dismissing contract claims as against individual defendants).

### ii. *New York State Education Law Claims*

■ Plaintiff alleges that each defendant is liable under the New York State Education Law (the "Education Law"). Plaintiffs amended complaint, however, is completely devoid of any allegation that would put defendants on notice of the provision of the Education Law to which he refers. Rule 8(a)(1) of the Federal Rules of Civil Procedure requires that a pleading contain a "short and plain statement" of a claim showing the pleader is entitled to relief. Compliance with Rule 8 requires that the pleader put the defendant on notice of the grounds for which he seeks relief. *See* FRCP 8(a)(2).

The Education Law is comprised of thousands of sections and provisions. Plaintiff's amended complaint does nothing to put defendants on notice of the provisions upon which he relies and makes it impossible for defendants to prepare to defend themselves against his claim. Plaintiff's pleading of a violation of the Education Law fails to comply with the requirements of Rule 8 of the Federal Rules. Accordingly, the court dismisses all claims brought pursuant to the Education Law.

■ Plaintiff is granted thirty days from the date of this Order to amend his complaint to plead clearly any alleged violation of the Education Law by the University. Having dismissed all Federal claims (and the state law breach of contract claims) asserted against the Individual Defendants, the court will decline to exercise pendent jurisdiction over any Education Law claims that might be asserted against any of the Individual Defendants. The court expresses no opinion regarding the viability of any such claim, but holds only that it declines to exercise pendent jurisdiction over such claims. Accordingly, plaintiff is given leave to amend his complaint to properly allege any claims pursuant to the Education Law against the University.

### iii. *Trustee Immunity Under Section 720–A Of New York's Not–For–Profit Corporation Law*

The Trustees seek dismissal of all pendent state law claims on the ground that these individuals are entitled to immunity pursuant to section 720–a of the New York Not–For–Profit Corporation Law. The pertinent section provides that persons serving without compensation as trustees of a corporation shall be liable to third parties for actions taken in connection with their duties as trustees only if the trustee's conduct constitutes "gross negligence or was intended to cause the resulting harm ..." N.Y. Not–Fort–Profit Corp. L. § 720–a ("Section 720–a").

The pendent state law claims for which the Trustees seek immunity consist of the breach of contract claims and the claims brought pursuant to the New York Education law. As detailed above, this court has dismissed the breach of contract claims as against all Individual Defendants. including the Trustees. Additionally, the court has declined to exercise pendent jurisdiction over any Education Law claims that plaintiff might have against the Individual Defendants. Accordingly, there are no surviving state claims against the Trustees. The court will therefore not address the issue of whether a motion to dismiss based upon Section 720–a would be appropriate.

### iv. *Failure To Properly Serve Defendants Norton and Goldstein*

In addition to the grounds asserted above, defendants Norton and Goldstein seek dismissal of the amended complaint for lack of personal jurisdiction on the ground that neither of these defendants were ever properly served. In view of the holdings above, there are no surviving claims against these individuals and none will be exercised in any amended pleading. Accordingly, the court need not decide wither Norton and/or Goldstein were ever properly served.

### CONCLUSION

For the foregoing reasons, the motion to dismiss the ADA and Rehabilitation Act claims against all of the Individual Defendants is granted. The motion to dismiss the breach of contract claims against all Individual Defendants is granted. The motion to dismiss all claims brought pursuant to the New York State Education Law is granted with leave to replead against the University only. The motion to dismiss all claims against defendants Norton and Goldstein for lack of personal jurisdiction and the motion to dismiss all claims brought against the Trustees on the ground of qualified immunity are denied as moot.

In view of the foregoing rulings, plaintiffs' complaint remains only against Adelphi University. As to Adelphi University, the remaining claims are the ADA claim, the Rehabilitation Act claim and the breach of contract claim. Plaintiffs may replead their claims pursuant to the New York State Education Law against the University as provided herein.

SO ORDERED.