Thomas V. CORR, Plaintiff,

v.

**MTA LONG ISLAND BUS, agency of the Metropolitan Transportation Authority, State of New York, E. Virgil Conway, Chairman, Helena E. Williams, Pres., John Mandalese, stockroom manager, Donald Cameron, head of operations, individually and as MTA/Bus employees, and Transport Workers Union Local 252, Peter J. Dempsey, President, James McGrath, shop vice-president, Chris Gavin, head shop steward, and William Scott and Robert Cassidy, assistant shop stewards, individually, as employees and as union officials, Defendants.**

No. CV 97–2562(DRH).

United States District Court, E.D. New York.

Oct. 16, 1998.

Charles E. Berg, South Huntington, NY, for Plaintiff.

Williams & Harris, L.L.P., New York City by Robert R. Reed, for defendants MTA Long Island Bus, agency of the Metropolitan Transportation Authority, State of New York, E. Virgil Conway, Helena E. Williams, John Mandalese, Donald Cameron, James McGrath, Chris Gavin, William Scott and Robert Cassidy.

Colleran, O'Hara & Mills, Garden City, NY by Edward J. Groarke, Carol L. O'Rourke, for defendants Transport Workers Union Local 252 and Peter J. Dempsey.

### AMENDED MEMORANDUM AND ORDER

HURLEY, District Judge.

Pending before the Court in this action are: (1) the motion of Defendants MTA Long Island Bus, agency of the Metropolitan Transportation Authority, State of New York ("LI Bus"), E. Virgil Conway, Helena E. Williams, John Mandalese, Donald Cameron, James McGrath, Chris Gavin, William Scott and Robert Cassidy (collectively the "MTA Defendants") for summary judgment on Plaintiff's claims, pursuant to Federal Rule of Civil Procedure ("Rule") 56(b); and (2) the motion of Defendants Transport Workers Union Local 252 ("Local 252") and Peter J. Dempsey ("Dempsey") (collectively the "Union Defendants") to dismiss the action as against them, pursuant to Rule 12(b)(6), or, alternatively, for summary judgment, pursuant to Rule 56(b). For the reasons discussed below, the MTA Defendants' motion for summary judgment on Plaintiff's federal claims is granted, the Union Defendants' motion, which the Court treats as one for summary judgment, on Plaintiff's federal claim[1] is granted, and Plaintiff's state law claims are dismissed.

### BACKGROUND

LI Bus is a New York State public benefit corporation that provides bus service in Nassau County, western Suffolk County and eastern Queens County. (William K. Horan Affidavit, sworn to October 27, 1997 ("Horan Aff.") ¶ 2.) It is a subsidiary of the Metropolitan Transportation Authority ("MTA"). (Id.) Plaintiff began employment with LI Bus as a bus cleaner, Class V Maintainer, in 1986. (Thomas V. Corr Affidavit, sworn to December 31, 1997 ("Pl.'s Aff.") ¶ 2; Horan Aff. ¶ 4 & n. 2.) He was initially assigned to LI Bus's Rockville Centre garage. (Horan Aff. ¶ 4.) In 1987, Plaintiff was promoted to the position of Class C Mechanic; he remained assigned to the Rockville Centre garage. (Pl.'s Aff. ¶ 3; Horan Aff. ¶ 4 & n. 3.) At all times during the course of his employment, Plaintiff was represented by Local 252, and, consequently, was covered by the collective bargaining agreements negotiated between LI Bus and Local 252. (Pl.'s Aff. ¶ 4; Horan Aff. ¶ 3; Peter J. Dempsey Affidavit, sworn to June 24, 1997 ("Dempsey Aff.") ¶ 3.)

In May 1989, Defendants commenced what Plaintiff characterizes as a conspiracy "to bring about [his] disgrace, humiliation and ruin, and to cause [his] discharge from employment." (Pl.'s Aff. ¶ 13; see Compl. ¶ 18.) According to Plaintiff, the conspiracy started

---

1. Plaintiff has proffered only one federal claim against the Union Defendants.

after he complained to his shop steward about the "appropriation" of his lunch room by LI Bus's human resources department. (Compl. ¶ 13; Pl.'s Aff. ¶ 14.) In response to Plaintiff's complaint, the shop steward and LI Bus's head of security physically removed him from the lunchroom to the offices of the Donald Dawcett, the Rockville Centre Location Chief, who suspended Plaintiff pending a hearing. (Compl.¶ 14.) Defendant Dempsey, President of Local 252, had Plaintiff reinstated later that day after speaking with the drivers' head shop steward at the Rockville Centre garage, "who confirmed that human resources had in fact appropriated the mechanics lunch room without prior notice and despite the fact that other, more suitable space was available for their purposes." (*Id.* ¶ 15.)

Plaintiff alleges the following subsequent events "[i]n furtherance of the conspiracy": (1) in November 1990, he was denied the right to sit for a body shop promotion examination after completing the requisite six-month training/probationary period, (Compl.¶ 19(a); Pl.'s Aff. ¶ 15); (2) on or about June 1, 1993, Defendant Mandalese, the stockroom supervisor, forced him to take a promotional examination in that department after only one month of training rather than the requisite six months, (Compl.¶ 19(b); Pl.'s Aff. ¶ 16); (3) although Plaintiff passed the stockroom promotional examination, Defendants Gavin, Scott, Cassidy and McGrath pressured Plaintiff to take "a second unprecedented examination," to which Plaintiff refused, (Compl.¶ 19(c)–(d); Pl.'s Aff. ¶ 16); (4) after his refusal to take this "second examination," Plaintiff's first examination "was regraded to a failure ... under the sanction of [LI Bus's] management," (Compl.¶ 19(d); Pl.'s Aff. ¶ 16); (5) from June 1993 until he took his leave of absence, Defendants Scott, Cassidy, McGrath and Cameron placed Plaintiff under "constant" work surveillance, (Compl.¶ 19(e); Pl.'s Aff. ¶ 17); (6) in August 1993, Defendant McGrath directed another

LI Bus employee, "a six-foot, five-inch weightlifter" who was twenty years younger than Plaintiff, "to taunt Plaintiff into fighting with him," (Compl.¶ 19(f); Pl.'s Aff. ¶ 18); and (7) on six separate occasions in September 1993, Plaintiff was followed home from work and "placed in fear of his life" when two pick-up trucks "bumped [his] car ... from the rear and brushed [his] car from the right succeeding in forcing him onto the median"; on the last two occasions, Plaintiff "was warned to stop making trouble at [LI Bus]." (Compl.¶ 19(g); Pl.'s Aff. ¶ 19.)

According to Plaintiff, he "had been experiencing mood swings, sleeplessness, fatigue and anxiety" from May 1989 through July 7, 1994. (Pl's Aff. ¶ 5.) Plaintiff maintains that he notified Margaret Frazer, LI Bus's nurse, and Donald Dawcett, Local 252's Location Chief, of his symptoms, although he does not state when in fact he advised these persons of his condition. (Pl.'s Aff. ¶ 5.) On July 7, 1994, Plaintiff suffered "a stress[-]induced nervous breakdown." (Compl.¶ 19(h); Pl.'s Aff. ¶ 6.) At some point, again unspecified by Plaintiff, he was diagnosed with bi-polar disorder, or manic depression.[2] (Pl.'s Aff. ¶ 6.) He did not work at all from July 9, 1994 through October 12, 1994, then worked sporadically in October, November and December 1994. (*See* Horan Reply Aff. ¶ 3 & Ex. B.) Plaintiff also was absent from work from December 9, 1994 through December 9, 1995. (Horan Aff. ¶ 5; *see also* Pl.'s Aff. ¶ 6.)

By letter dated December 12, 1995, LI Bus informed Plaintiff that he was terminated effective December 9, 1995 for being "absent from work for a period exceeding one year." [3] (Horan Aff. ¶ 4 & Ex. A.) Plaintiff's dismissal was predicated upon Article III, Section 2(d) of the January 20, 1995 collective bargaining agreement (the "January 20, 1995 CBA") executed by LI Bus and Local 252, which provides that "[a]n employee absent for a period of one (1) year after October 1, 1994

---

2. Plaintiff neither specifies the date he was diagnosed or the doctor who made the diagnosis, nor does he set forth any documentation substantiating such diagnosis.

3. LI Bus asserts that the termination letter was sent to Plaintiff by certified mail on December

12, 1995. (Horan Aff. ¶ 5.) Plaintiff maintains that he received notice of his termination on December 22, 1995 through "a chance telephone conversation" with Local 252's secretary. (Compl.¶ 19(j).)

will be terminated from employment and will no longer be entitled to the maintenance of benefits or seniority." (*See* Horan Aff. Ex. B.)

After Plaintiff's termination, Local 252, on Plaintiff's behalf, commenced a grievance proceeding pursuant to the provisions of the January 20, 1995 CBA. (Pl.'s Aff. ¶ 21; Dempsey Aff. ¶ 12.) Ultimately, an arbitration hearing was held on January 29, 1996. (Pl.'s Aff. ¶ 21; Dempsey Aff. ¶ 14.) On March 1, 1996, Impartial Arbitrator Shelly S. Friedman upheld Plaintiff's termination, stating in pertinent part as follows:

> There is no question that [Plaintiff] has [sic] been absent from work for the entire year prior to the date of his dismissal. At issue is whether the collective bargaining provision terminating employees whose medical condition has kept them from working for one year is conclusive and nonarbitrable in cases where there is no factual dispute that the employee has been absent for one year. I have consistently upheld [LI Bus's] right to maintain this policy. [Local 252] does not challenge the policy in general, but contends that it should not be applied against [Plaintiff]. The basis of [Local 252's] position is that [Plaintiff] is now prepared to make a credible effort to return to work but that he has not been permitted to do so by [LI Bus].
>
> In my opinion, [LI Bus] has the right to reject any further offerings by [Plaintiff] since no attempt to return to work was made during the year in question. Of course, [LI Bus] may not exercise that right in an arbitrary and capricious manner. The record in this case indicates that it has not. The one-year policy had fully run its course without any indication from [Plaintiff] that he would return within that period. Based on that record, and notwithstanding [Local 252's] strong argument to the contrary, there is no basis for overturning [LI Bus's] decision to terminate [Plaintiff].

(Horan Aff.Ex. C.)

On October 2, 1996, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") against LI Bus and Local 252. (*See* Demp-

sey Aff.Ex. I.) In his EEOC Charge, Plaintiff claimed that he "was denied two earned promotions and terminated while [he] was absent during a well-documented, job related disability." (*Id.*) Plaintiff further asserted that he "was not afforded proper accommodation in the workplace or an opportunity to return to work after [his] illness." (*Id.*) On or about February 1, 1997, Plaintiff received a right to sue letter from the EEOC, advising him that he had ninety days within which to commence a lawsuit in federal district court. (*See* Compl.Ex. A.)

Plaintiff commenced the instant action on May 6, 1997. In his Complaint, Plaintiff maintains (1) that Defendants terminated him on account of his disability, in violation of the Americans With Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq,* (*see* Compl. ¶¶ 45–53); and (2) that such discharge violated "an express written employment agreement between plaintiff and defendants." (*See id.* ¶¶ 24–30.) Additionally, Plaintiff brings state law claims for malicious conspiracy to cause discharge from employment, (*id.* ¶¶ 17–23); breach of the covenant of good faith and fair dealing, (*id.* ¶¶ 31–35); intentional interference with business relations, (*id.* ¶¶ 36–44); intentional infliction of emotional distress, (*id.* ¶¶ 54–57); negligent infliction of emotional distress, (*id.* ¶¶ 58–61); fraud, (*id.* ¶¶ 62–68); and negligent misrepresentation. (*Id.* ¶¶ 69–73.)

## DISCUSSION

### I. Summary Judgment Standards

The legal principles employed by the Court when ruling upon a motion for summary judgment are well-established. Summary judgment may be granted only when it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). The moving party bears the initial burden "of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157,

90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The substantive law governing the case will determine those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has come forward with support demonstrating that no genuine issue of material fact remains to be tried, the non-moving party "must come forward with affidavits, depositions, or other sworn evidence as permitted by Fed.R.Civ.P. 56, setting forth specific facts showing that there exists a genuine issue of material fact." *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996). In reviewing these materials, the Court "is required to draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment." *Id.*

Nevertheless, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505 (emphases omitted). Moreover, "[c]onclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,'" *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505), and "more than 'some metaphysical doubt as to the material facts.'" *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir.1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Put another way, "[t]he non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, ... or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990) (citations and internal quotations omitted).

Although courts should exercise caution in granting summary judgment in discrimination cases where the employer's intent is at issue, *see Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994), "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 40 (2d Cir.1994). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo,* 22 F.3d at 1224.

## II. The ADA Claim

The ADA proscribes discrimination "against a qualified individual with a disability because of the disability of such individual in regard to ... the advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. ADA claims are scrutinized under the burden-shifting analysis for Title VII claims articulated by the United States Supreme Court in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See, e.g., Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir.1998) (applying *McDonnell Douglas* test in ADA case); *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 722 (2d Cir.1994) (applying *McDonnell Douglas* test in Rehabilitation Act case); *Sarno v. Douglas Elliman–Gibbons & Ives,* 17 F.Supp.2d 271, ——, 1998 WL 542325, at *2 (S.D.N.Y. 1998); *Glowacki v. Buffalo Gen. Hosp.,* 2 F.Supp.2d 346, 350 (W.D.N.Y.1998); *Ivaniuc v. Hauer Knitting Mills, Inc.,* No. 94 CV 5909(SJ), 1998 WL 57077, at *5 (E.D.N.Y. Feb. 5, 1998).

■ A plaintiff seeking relief under the ADA bears the initial burden of establishing a prima facie case. *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869 (2d Cir.1998). In order to establish a prima facie case of discrimination under the ADA, Plaintiff must show that "(1) h[is] employer is subject to the

ADA; (2)[ ]he suffers from a disability within the meaning of the ADA; (3)[ ]he could perform the essential functions of h[is] job with or without reasonable accommodation; and (4)[ ]he was [discriminated against] because of h[is] disability." *Id.* at 869–70; *see Lyons v.Legal Aid Soc'y,* 68 F.3d 1512, 1515 (2d Cir.1995). "The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." *Scaria v. Rubin,* 117 F.3d 652, 654 (2d Cir.1997) (per curiam); *see Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 204 (2d Cir.1995) (characterizing plaintiff's initial burden as *"de minimis* "). Establishment of the prima facie case creates a presumption that the employer's adverse employment decision constituted unlawful discrimination against the employee. *See Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.

After a plaintiff makes out a prima facie case of disability discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Greenway,* 143 F.3d at 52. "Any legitimate non-discriminatory reason will rebut the presumption [of discrimination] triggered by the prima facie case." *Fisher v. Vassar College,* 114 F.3d 1332, 1335–36 (2d Cir.1997) (en banc), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). The employer need not conclusively establish the validity of its proffered reason, rather, it merely must show that such reason, "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the [adverse] employment action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Once the employer has articulated a legitimate non-discriminatory reason for the adverse employment decision, the burden shifts back to the plaintiff to put forth "adequate evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the employer were false, and that more likely than not the employee's [disability] was the reason for the [adverse decision]." *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 129 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *see also Fields v. New York State Office of Mental Retardation and Developmental Disabilities,* 115 F.3d 116, 119 (2d Cir.1997) ("The ultimate issue . . . is whether the plaintiff has sustained [his] burden of proving that the adverse action was motivated by an impermissible reason."). In this regard, however, "a finding of pretext, together with the evidence comprising a prima facie case, is not always sufficient to sustain an ultimate finding of intentional discrimination." *Fisher,* 114 F.3d at 1338. Instead,

> a[n] [ADA] plaintiff may prevail only if an employer's proffered reasons are shown to be a pretext *for discrimination,* either because the pretext finding itself points to discrimination or because other evidence in the record points in that direction—or both. And the Supreme Court tells us that "a reason cannot be proved to be a 'pretext *for discrimination'* unless it is shown *both* that the reason was false, and that discrimination was the real reason." We have recognized again and again that a plaintiff does not necessarily satisfy the ultimate burden of showing intentional discrimination by showing pretext alone. A finding of pretext may advance the plaintiff's case, but a plaintiff cannot prevail without establishing . . . intentional discrimination by a preponderance of the evidence.

*Fisher,* 114 F.3d at 1339 (quoting *St. Mary's Honor Ctr.,* 509 U.S. at 515, 113 S.Ct. 2742).

A plaintiff may discharge his burden of showing that the reason for the adverse employment action was illegal discrimination by relying on "the evidence constituting the prima facie case, together with supportable inferences to be drawn from the false or erroneous character of the employer's proffered reason for the adverse action." *Fisher,* 114 F.3d at 1333. Accordingly, in some situations, a jury's disbelief of an employer's proffered non-discriminatory reason, along with a plaintiff's prima facie case, *could* permit a finder of fact to find unlawful discrimination. *See id.*

In evaluating an employer's actions in the context of a discrimination claim, the Court "does not sit as a super-personnel department that reexamines an entity's business

decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986) (cited in *Scaria*, 117 F.3d at 655). An employer is "not obligated to show justifiable cause for the discharge." *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir.1984). Instead, "[t]he plaintiff in an [ADA] case has the burden of showing that he was discharged because of [disability]." *Id.* "A business decision need not be good or even wise. It simply has to be nondiscriminatory...." *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 20 (7th Cir.1987) (cited in *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988)). "Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons." *Dister*, 859 F.2d at 1116; *see Visco v. Community Health Plan*, 957 F.Supp. 381, 388 (N.D.N.Y.1997) ("[A]n employer may exercise business judgment in making personnel decisions as long as they are not discriminatory."); *see also Orisek v. American Institute of Aeronautics and Astronautics*, 938 F.Supp. 185, 190 (S.D.N.Y. 1996) ("Title VII and the ADEA forbid disparate treatment on the basis of age, gender and national origin, but they may not be invoked merely to challenge the wisdom of any employer's decision.").

## A. The MTA Defendants

### 1. LI Bus

■ As a threshold matter, while Plaintiff claims that he "has a documented bi[-]polar (manic depressive) mental disability which prevented him from working from July 7, 1994 to February 23, 1996," [4] (Pl.'s Mem. of Law in Opp'n to the MTA Defs.' Mot. for Summ. J. at 10), the record before the Court is completely devoid of any medical affidavit, treating physician's report or other such documentation substantiating that Plaintiff was actually suffering from such a disorder at the time of his termination. Putting aside this glaring omission, the MTA Defendants argue that Plaintiff in any event has failed to establish the third prong of his prima facie case,

namely, that he could perform the essential functions of his job with or without reasonable accommodation. The Court agrees.

■ It is well-established that "[e]xcept in the unusual case where an employee can effectively perform all work-related duties at home, an employee 'who does not come to work cannot perform any of his job functions, essential or otherwise.'" *Tyndall v. National Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir. 1994) (quoting *Wimbley v. Bolger*, 642 F.Supp. 481, 485 (W.D.Tenn.1986), *aff'd*, 831 F.2d 298 (6th Cir.1987)); *see Aquinas v. Federal Express Corp.*, 940 F.Supp. 73, 78 (S.D.N.Y.1996) ("[A]n employee who cannot get to work does not satisfy the essential requirements of h[is] employment."); *Kotlowski v. Eastman Kodak Co.*, 922 F.Supp. 790, 798 (W.D.N.Y.1996) ("The ADA does not require an employer to accommodate an employee who cannot get to work. [The plaintiff's] inability to get to work on time, if at all, made her unqualified to perform the functions of her job."); *see also Carr v. Reno*, 23 F.3d 525, 530 (D.C.Cir.1994) ("[A]n essential function of any government job is an ability to appear for work (whether in the workplace or, in the unusual case, at home) and to complete assigned tasks within a reasonable period of time."); *Woods v. Runyon*, No. 94 Civ. 6235(DAB), 1998 WL 314885, at *6 (S.D.N.Y. June 12, 1998) ("To perform the essential functions of any government job, it is obvious that an employee must be present."); *cf. Greene v. State of New York*, No. 95 Civ. 6580(DAB), 1998 WL 264838, at *7 (S.D.N.Y. May 22, 1998) ("The absence of any allegations that Plaintiff's [sick] leave was illegitimate or beyond the allotment approved by Defendants, distinguishes the instant case, and renders summary judgment on these instances of 'absenteeism' inappropriate."). Here, it is undisputed that (1) Plaintiff was absent from work from December 9, 1994 through December 9, 1995; and (2) Plaintiff was not in fact able to return to work until February 23, 1996, at the earliest, one-and one-half years after taking his leave of absence, and two-and one-half months af-

---

**4.** In his Complaint, Plaintiff avers that he was not certified to return to work until March 1996.

(Compl.¶ 19(h).)

ter his termination. (Compl. ¶ 28; Pl.'s Aff. ¶ 6.)

Plaintiff nevertheless contends that he was a qualified individual with a disability in that he "had the right under the Collective Bargaining Agreement in effect when he left his employment to take a two-year leave of absence." (Pl.'s Mem. of Law in Opp'n to the MTA Defs.' Mot. for Summ. J. at 11.) According to Plaintiff, had he been advised by LI Bus that this two-year leave of absence was reduced to one year under the January 20, 1995 CBA, he "would have had the opportunity to return to work within the new one-year period." (Pl.'s Aff. ¶ 8.) Ultimately, Plaintiff asserts that it would be "unjust and inequitable" to apply the January 20, 1995 CBA to him "since he was unaware of it and Local 252 in conspiracy with [LI Bus] failed in its statutory duty to provide him with notice of same." (Pl.'s Mem. of Law in Opp'n to the MTA Defs.' Mot. for Summ. J. at 12.)

Plaintiff's arguments are unavailing. To be sure, at the time Plaintiff took his initial leave of absence in July 1994, the collective bargaining agreement in effect at that time provided for termination where an employee was absent from work for a period of two years.[5] (Horan Aff. ¶ 5 n. 5.) Plaintiff concedes, however, that the January 20, 1995 CBA, which expressly provides for dismissal of an employee after a one-year absence from work, was made effective October 1, 1994.[6] Other than invoking generalized notions of equity, Plaintiff presents no authority for the proposition that the Court has the authority to go outside of the January 20, 1995 CBA when determining the rights of LI Bus employees represented by Local 252.

Moreover, nothing in the January 20, 1995 CBA requires LI Bus to issue any type of oral or written warning prior to terminating an employee. Additionally, as regards Plaintiff's claim that LI Bus failed to advise him of the changes in the January 20, 1995 CBA, it is beyond cavil that an employer has no duty to inform a union employee of his rights under a collective bargaining agreement. While Plaintiff asserts that LI Bus "conspired" with Local 252 to prevent him from receiving a copy of the January 20, 1995 CBA, he fails to produce a shred of factual support for this contention. In any event, the statute Plaintiff claims Local 252 violated places an affirmative obligation on the part of a union to forward a copy of a collective bargaining agreement to a unit member only upon the request of that unit member. *See* 29 U.S.C. § 414 ("It shall be the duty of the . . . labor organization . . . to forward a copy of each collective bargaining agreement made by such labor organization with any employer *to any employee who requests such a copy* and whose rights as such employee are directly affected by such agreement." (emphasis added)). Here, Plaintiff makes no allegation that he actually requested a copy of the January 20, 1995 CBA from Local 252. Finally, while Plaintiff bemoans the fact that his ignorance of the January 20, 1995 CBA

---

**5.** None of the parties filed for the Court's perusal a copy of the collective bargaining agreement in effect in July 1994. Looking to the terms of the January 20, 1995 CBA, however, which presumably parallel the provisions of the prior collective bargaining agreement, the MTA Defendants correctly note that, rather than bestowing an absolute right to take a leave a absence, "[t]he 'absence rule,' whether with respect to a period of one year or two, relates to a matter of employee discipline, involving a loss of seniority rights." (Horan Reply Aff. ¶ 4.) This interpretation of the "absence rule" is buttressed by the fact that the applicable section is included in Article III of the January 20, 1995 CBA, which relates to "Probation and Seniority," (*see* Horan Aff.Ex. B), and, additionally, by the inclusion in the January 20, 1995 CBA (and presumably in the prior collective bargaining agreement entered into between LI Bus and Local 252) of a separate article and section governing leaves of absence. (*Id.*)

**6.** The Court also notes that this provision was reinforced by a Memorandum of Understanding executed between LI Bus and Local 252 on January 20, 1995, which provided in pertinent part that "effective October 1, 1994, any rule, practice or third-party decision such as Arbitrator Zuccotti's June 26, 1985 Opinion and Award, which provides for the maintenance of benefits, seniority, vacation, holidays, etc. for two (2) years during absences will be amended to provide for the maintenance of those benefits currently maintained for a one (1) year period." (*See* Horan Reply Aff. ¶ 2 n. 2 & Ex. A.) *See generally Southeastern Pennsylvania Transp. Authority v. Brotherhood of R.R. Signalmen*, 882 F.2d 778, 784 (3d Cir.1989) (holding parol evidence may be used freely in interpreting collective bargaining agreements) (collecting cases from other circuits).

caused him to lose the "opportunity" to return to work within one year of December 9, 1994, Plaintiff, by his own account, was in fact unable to return to work until February 23, 1996, at the earliest.

Similarly unpersuasive are Plaintiff's claims that: (1) in October 1995, he was misled by LI Bus into believing that "there was no urgency to return to work," (Pl.'s Mem. of Law in Opp'n to the MTA Defs.' Mot. for Summ.J. at 12); and (2) he was not afforded the opportunity to return to work after his illness. With respect to the former, Plaintiff offers the Affidavit of Charles Corr, his brother, who works as a bus driver for LI Bus. (Affidavit of Charles Corr, sworn to December 31, 1997 ("Charles Corr Aff.") ¶ 1.) Charles Corr avers that in October 1995, he spoke with Margaret Frazer, LI Bus's company nurse, who had sent a letter to Plaintiff inquiring as to his condition. (*Id.* ¶ 3.) According to Charles Corr, "[a]s a result of [his] conversation with ... Frazer, [he] informed [Plaintiff] that there was no need to hurry back to work." (*Id.*) Unfortunately, Mr. Corr gives absolutely no details in regard to the substance of his conversation with Ms. Frazer which would support the information he relayed to Plaintiff. Moreover, there is no indication that Nurse Frazer had authority to act on behalf of LI Bus with respect to personnel matters, let alone waive LI Bus's rights under the January 20, 1995 CBA.

Plaintiff's latter argument is that LI Bus refused to grant Plaintiff the opportunity to return to work after he was physically and mentally capable of doing so. As an initial matter, Plaintiff—throughout the entire year in which he was absent from work—neither took it upon himself to advise LI Bus of the status of his condition, nor, as a necessary corollary, requested an accommodation with respect to his employment. *See Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir.1996) ("If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one."); *Sidor v. Reno*, No. 95 Civ. 9588(KMW), 1997 WL 582846, at *7 (S.D.N.Y. Sept. 19, 1997) ("[T]he employee must trigger the process [of reasonable ac-

commodation] with a request for accommodations."). It is well-established that asking for "a second chance" does not constitute a request for accommodation within the meaning of the ADA. *See Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666–67 (7th Cir. 1995); *Woolcott, v. E.I. DuPont de Nemours & Co.*, No. 95–CV–0721E(F), 1997 WL 251475, at *4 (W.D.N.Y. Apr.29, 1997). Moreover, apart from its obligations under the January 20, 1995 CBA, LI Bus had no duty to keep Plaintiff's job open during his convalescence. In *Myers v. Hose*, 50 F.3d 278, 282 (4th Cir.1995), the plaintiff claimed that his employer failed to accommodate his disability "by refusing to grant him a period of time in which to cure his disabilities." The Fourth Circuit Court of Appeals, observing that Congress did not intend "to ... plac[e] employers in an untenable business position," rejected this argument, stating as follows:

> [The ADA's provisions] contain no reference to an individual's future ability to perform the essential functions of his position. To the contrary, they are formulated entirely in the present tense, framing the precise issue as whether an individual "can" (not "will be able to") perform the job with reasonable accommodation. Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period of time for an accommodation to achieve its intended effect. Rather, reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question.
>
> ... For the [employer] to be forced to stand by—or hire temporary help—while [the plaintiff] endeavors to improve his failing health would be a significant burden. We therefore hold that reasonable accommodation does not require the [employer] to wait indefinitely for [a plaintiff's] medical conditions to be corrected....

*Myers*, 50 F.3d at 283. The Court finds the reasoning of *Myers* persuasive, and expressly adopts its holding.

Accordingly, Plaintiff has failed to establish that he was able to perform the essential functions of his job with or without reasonable accommodation. Assuming, *arguendo*, that Plaintiff was a qualified individual with a disability, Plaintiff in any event has presented insufficient evidence establishing that his termination was motivated by disability discrimination. In response to LI Bus's legitimate, non-discriminatory reason for Plaintiff's discharge, namely, his violation of the January 20, 1995 CBA, Plaintiff relies upon the fact that he was disabled at the time of his termination.[7] Plaintiff's disability, however, may not be used to shield him from the adverse consequences of inadequate job performance. *See Teahan v. Metro–North Commuter R.R.*, 951 F.2d 511, 516 (2d Cir.1991) ("If the consequences of the handicap are such that the employee is not qualified for the position, then a firing because of that handicap is not discriminatory, even though the firing is solely by reason of the handicap."); *Adams v. Rochester Gen. Hosp.*, 977 F.Supp. 226, 236 (W.D.N.Y.1997) ("Discrimination under the ADA is not established if the disability caused unacceptable job performance."); *Cowan v. MaBSTOA*, 961 F.Supp. 37, 42 (E.D.N.Y.1997) ("Plaintiff's alleged disability cannot insulate him from the discipline that would be imposed upon any other employee.").

Additionally, Plaintiff states that Defendants' "egregious acts of harassment, physical violence and threats … occurred while [he] was suffering from symptoms of his bi[-]polar disorder and defendants were aware of same." (Pl.'s Mem. of Law in Opp'n to the MTA Defs.' Mot. for Summ.J. at 13.) Although Plaintiff was not allegedly diagnosed with bi-polar disorder until sometime after July 7, 1994, he maintains that he informed Nurse Frazer sometime prior to then that he had been experiencing "mood swings, sleeplessness, fatigue and anxiety." (Pl.'s Aff. ¶ 5.) Plaintiff makes no allegation, however, that either John Mandalese or Donald Cameron, the two LI Bus officials specified in the Complaint who purportedly "harassed" him, were aware of such symptoms, let alone were aware that Plaintiff suffered from a disability. *See Adams*, 977 F.Supp. at 236 ("It simply is not reasonable to expect [the employer] to infer that [the employee] suffered from a mental disability which the ADA would require the [employer] to accommodate from the limited proof of 'strange behavior' and performance problems found in the record."); *Lippman v. Sholom Home, Inc.*, 945 F.Supp. 188, 192 (D.Minn.1996) ("An employer is not obligated to observe employees for any behavior which may be symptomatic of a disability, and then divine that the employee actually suffers from a disability."); *see also Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir.1995) ("[T]he ADA does not require clairvoyance."). Moreover, nothing in the record supports Plaintiff's claim that he was harassed and threatened on account of his disability. To the contrary, the Complaint strongly suggests that, to the extent such harassment actually occurred, it was in retaliation for Plaintiff having complained about the human resources department's "appropriation" of his lunchroom. (*See, e.g.*, Compl. ¶ 16 ("Though vindicated by getting the lunch room returned to its proper use, and thereafter reinstated without further suspension, plaintiff was thereafter denied every personal consideration and promotion earned by him above the grade of 'C' Mechanic.").)

Accordingly, the MTA Defendants motion for summary judgment on Plaintiff's ADA claim against LI Bus is granted.

### 2. The MTA Individual Defendants

■ The MTA Defendants move for summary judgment on Plaintiff's ADA claim against Defendants E. Virgil Conway, Helena E. Williams, John Mandalese and Donald Cameron in their individual capacities, contending that (1) individual liability is not

---

7. Plaintiff correctly notes that his initial burden of establishing that he was terminated under circumstances giving rise to an inference of discrimination is *de minimis*. Once the employer articulates a legitimate non-discriminatory reason for the adverse employment decision, however, the presumption of discrimination created by the plaintiff's establishment of a prima facie case disappears, and the burden again shifts to the plaintiff to put forth adequate evidence to support a rational finding that the employer's proffered reason was false, and that more likely than not disability was a motivating factor in the adverse decision. *See Holt*, 95 F.3d at 129.

cognizable under the ADA; (2) Defendants Conway and Williams, as officials of LI Bus, a New York State public benefit corporation, are qualifiedly immune from suit under the ADA; and (3) none of the MTA Individual Defendants was named as a respondent in Plaintiff's Charge of Discrimination filed with the EEOC. Plaintiff rebuts that "individual liability is essential to dissuade supervisors and other individuals from violating the law ... [and] is needed when an employer ... is judgment proof." (Pl.'s Mem. of Law in Opp'n to the MTA Defs.' Mot. for Summ.J. at 15.)

In *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1314 (2d Cir.1995), the Second Circuit Court of Appeals, observing that individual liability "would lead to results that Congress could not have contemplated," held that "the statutory scheme and remedial provisions of Title VII indicate that Congress intended to limit liability to employer-entities with fifteen or more employees." While the Second Circuit has yet to address the issue of individual liability under the ADA, the Seventh and Eleventh Circuit Courts of Appeals have both held that individuals who do not otherwise meet the statutory definition of "employer" under the ADA cannot be held liable under the statute. *See Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996); U.S. *E.E.O.C. v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1282 (7th Cir.1995). Moreover, as Title VII's definition of "employer" mirrors the ADA's, (*compare* 42 U.S.C. § 2000e(b) *with* 42 U.S.C. § 12111(5)(A)), district courts within the Second Circuit considering the issue have similarly held that no individual liability exists under the ADA.[8] *See, e.g., Doyle v. Columbia–Presbyterian Medical Center,* No. 97 Civ. 5487(HB), 1998 WL 430551, at *2 (S.D.N.Y. July 29, 1998); *Harrison v. Indo-*

*suez,* 6 F.Supp.2d 224, 229 (S.D.N.Y.1998); *Herzog v. McLane Northeast, Inc.,* 999 F.Supp. 274, 276 (N.D.N.Y.1998); *Kulniszewski v. Swist,* No. 94–CV–0806E(F), 1998 WL 135815, at *3 (W.D.N.Y. Mar.16, 1998); *Passamonti v. Itochu Int'l, Inc.,* No. 97 Civ. 5493(DAB), 1998 WL 107165, at *3 (S.D.N.Y. Mar. 11, 1998); *Lopez–Salerno v. Hartford Fire Ins. Co.,* No. 3:97 CV 273(AHN), 1997 WL 766890, at *4 (D.Conn. Dec. 8, 1997); *Brennan v. New York City Police Dep't,* No. 93 Civ. 8461(BSJ), 1997 WL 811543, at *4 (S.D.N.Y. May 27, 1997), *aff'd,* 141 F.3d 1151 (2d Cir.1998) (unpublished table decision); *Lane v. Maryhaven Ctr. of Hope,* 944 F.Supp. 158, 162 (E.D.N.Y.1996); *Cerrato v. Durham,* 941 F.Supp. 388, 395 (S.D.N.Y. 1996); *Yaba v. Cadwalader, Wickersham & Taft,* 931 F.Supp. 271, 274 (S.D.N.Y.1996).

In light of *Tomka,* and the overwhelming authority in the Second Circuit construing *Tomka* as prohibiting individual liability under the ADA, Plaintiff's ADA claim against Defendants Conway, Williams, Mandalese and Cameron in their individual capacities must be, and hereby is, dismissed.[9]

## B. The Union Defendants
### 1. Local 252

The Union Defendants move to dismiss Plaintiff's ADA claim as against Local 252 pursuant to Rule 12(b)(6), or, alternatively, for summary judgment, pursuant to Rule 56(b). Because both Plaintiff and the Union Defendants have submitted material outside of the pleadings, the Court will consider this extraneous material and treat the motion as one for summary judgment.

■ Plaintiff's ADA claim against Local 252 is predicated upon his termination and Local 252's (1) alleged participation in "falsifying promotional test results to favor or

---

8. Plaintiff concedes that "[b]ecause the ADA defines employer in terms identical to those appearing in Title VII, ... Title VII provides guidance in interpreting individual liability under the ADA ." (Pl.'s Mem. of Law in Opp'n to the MTA Defs.' Mot. for Summ.J. at 15.); *see AIC Security Investigations, Ltd.,* 55 F.3d at 1280 ("Courts routinely apply arguments regarding individual liability to [the ADA, Title VII and the Age Discrimination in Employment Act] interchangeably.").

9. In light of the Court's holding, the Court need not address the MTA Defendants' arguments that Defendants Conway and Williams are entitled to qualified immunity and that Plaintiff failed to name Defendants Conway, Williams, Mandalese and Cameron as respondents in his Charge of Discrimination filed with the EEOC.

disfavor employees singled out by [LI Bus] and Local 252 management," (Compl.¶ 50); and (2) wrongful surveillance and harassment of Plaintiff from June 1993 until July 7, 1994. (Compl.¶ 19(e)–(h).) With respect to Plaintiff's termination, the Union Defendants note, and Plaintiff does not dispute, that the January 20, 1995 CBA vests LI Bus with exclusive authority in regard to the "hiring, direction, promotion, demotion, discipline, discharge and layoff of its employees." (*See* January 20, 1995 CBA Article I, Section 8(a) (annexed as Ex. B to Horan Aff.).) As Local 252 had no authority to terminate Plaintiff, it follows that they could not have terminated Plaintiff in violation of the ADA. While Plaintiff argues that his termination was the product of "a conspiracy among all of the defendants," (Pl.'s Mem. of Law in Opp'n to the Union Defs.' Mot. for Summ.J. at 15), he presents no evidence to support this assertion.[10]

As regards Plaintiff's claims that union officials wrongfully "pressured" him to take a second stock room promotional examination after having initially passed the examination, and further subjected him to surveillance and harassment, it is well-settled that in order to bring an ADA claim in federal court, a plaintiff must first file a Charge of Discrimination with the EEOC. *See* 42 U.S.C. § 12117(a) (incorporating the provisions of 42 U.S.C. § 2000e–5); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788 (5th Cir.1996); *Lacoparra v. Pergament Home Ctrs.*, Inc., 982 F.Supp. 213, 226 (S.D.N.Y.1997). Generally, a charge of discrimination must be filed with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). "However, if the alleged discrimination took place in a state or locality that has its own discrimination laws and an agency to enforce those laws, then the time period for 'fil[ing]' claims with the EEOC is extended to 300 days." *Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 (2d Cir.1996). As the alleged discrimination in the instant case took place in New York, which has both anti-discrimination laws (codified in the Human Rights Law, N.Y. Execu-

tive Law Section 290 *et seq.*) and an anti-discrimination agency, to wit, the Division of Human Rights, the 300–day limit applies in this case.

Here, it is undisputed that the last of these alleged discriminatory acts occurred on or about July 7, 1994. (Compl.¶ 19(h).) As Plaintiff did not file a Charge of Discrimination with the EEOC until October 1996, Plaintiff's disability discrimination claim against Local 252 predicated upon the stock room promotional examination administered to Plaintiff, as well as Local 252's surveillance and harassment of Plaintiff, are time-barred. *See Butts v. New York Dep't of Hous. Preservation Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993) ("When a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred."). Assuming, *arguendo*, that this claim was not time-barred, Plaintiff in any event has failed to present sufficient evidence demonstrating that his disability (undiagnosed as it was until sometime after July 7, 1994), was a motivating factor in Local 252's alleged adverse treatment of him.

**2. Defendants Dempsey, McGrath, Gavin, Scott and Cassidy**

Because individual liability does not exist under the ADA, *see supra* pp. 369–70, Plaintiff's ADA claim against Defendant Dempsey in his individual capacity is dismissed. Additionally, the Court *sua sponte* dismisses Plaintiff's ADA claims against Defendants McGrath, Gavin, Scott and Cassidy in their individual capacities.

**III. Breach of Employment Agreement**

With the exception of the ADA claim, the only other possible basis for federal jurisdiction over this action is Plaintiff's claim that LI Bus violated a "written employment agreement." As Plaintiff concedes that he was a member of Local 252 throughout the course of his employment, he was covered by the collective bargaining agreements executed by Local 252 on his behalf. Therefore, the "written employment agreement" to

---

**10.** Plaintiff's ADA claim against Local 252 predicated upon his termination also fails for the same reason it failed against LI Bus, namely, Plaintiff

has not established that he was able to perform the essential functions of his job with or without reasonable accommodation.

which Plaintiff refers presumably is one of those collective bargaining agreements.

■ Section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 185, provides in pertinent part as follows:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Assuming, *arguendo*, that LI Bus is deemed an "employer" for purposes of the LMRA,[11] the Court concludes that Plaintiff's claim against LI Bus for breach of a collective bargaining agreement is untimely.

■ Where, as here, grievance procedures in a collective bargaining agreement provide the exclusive means for resolving labor disputes,[12] it is not enough for the employee to establish of breach of the collective bargaining agreement. Instead, the employee must first demonstrate that his union breached its duty of fair representation in connection with the grievance process. *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Young v. United States Postal Serv.*, 907 F.2d 305, 307 (2d Cir.1990). The statute of limitations for such "hybrid" actions is six months, *DelCostello*, 462 U.S. at 172, 103 S.Ct. 2281, which " 'begins to run when a plaintiff knows or reasonably should

know that the union has breached its duty of fair representation.' " *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir.1995) (quoting *Flanigan v. IBT, Truck Drivers Local 671*, 942 F.2d 824, 827 (2d Cir.1991)). The six-month limitations period applies with equal force regardless of whether the employee sues the union, the employer or both. *See McKee v. Transco Prods., Inc.*, 874 F.2d 83, 86 (2d Cir.1989) ("Plaintiffs cannot circumvent the six-month limitations period for hybrid actions by choosing to sue only their employer.").

Here, Plaintiff claims that Local 252 "failed to fairly represent [him] by not presenting to the Arbitrator the [sic] plaintiff did not return to work for over one year because he was unaware of, and had not received a copy of the new Collective Bargaining Agreement." (Pl.'s Mem. of Law in Opp'n to the Union Defs.' Mot. for Summ.J. at 5.) Plaintiff, then, knew—or should have known—that Local 252 breached its duty of fair representation in connection with Plaintiff's termination on March 1, 1996, at the latest, when Impartial Arbitrator Friedman issued her written decision upholding LI Bus's termination of Plaintiff. As Plaintiff did not commence the instant action until May 1997, any claim for LI Bus's breach of a collective bargaining agreement is time-barred.

## IV. Plaintiff's State Law Claims

Because the Court dismisses Plaintiff's federal claims, the Court declines, in the exercise of its discretion, to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Castella-*

---

**11.** The LMRA adopts the definition of employer set forth in the National Labor Relations Act, *see* 29 U.S.C. § 142(3), which exempts from coverage "any State or political subdivision thereof." 29 U.S.C. § 152(2). In *N.L.R.B. v. Natural Gas Utility Dist.*, 402 U.S. 600, 604–05, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971), the Supreme Court, adopting the test of the NLRB, held that the "political subdivision" exemption was limited "to entities that are (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." In adopting the NLRB test, however, the High Court expressly declined to define the exact con-

tours of the political subdivision exemption. *Id.* at 605, 91 S.Ct. 1746.

As none of the parties addressed this issue, and because the Court concludes that Plaintiff's claim for LI Bus's breach of a collective bargaining agreement is untimely in any event, the Court need not decide whether in fact LI Bus is exempt from the provisions of the LMRA as a political subdivision.

**12.** Article II, Section 2(f) of the January 20, 1995 CBA provides in relevant part that "the decision in writing of the Impartial Arbitrator shall be binding and conclusive upon [LI Bus], [Local 252], and the employee."

*no v. City of New York,* 142 F.3d 58, 74 (2d Cir.1998) ("In light of the district courts' proper dismissal of the federal claims ... those courts did not abuse their discretion in declining to exercise jurisdiction over the state claims."), *petition for cert. denied,* —— U.S. ——, 119 S.Ct. 276, 142 L.Ed.2d 228 (1998); *Castellano v. Board of Trustees,* 937 F.2d 752, 758 (2d Cir.1991) (" 'If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.' " (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966))); *see also Morse v. University of Vermont,* 973 F.2d 122, 128 (2d Cir.1992).

## CONCLUSION

For the reasons set forth above, the Court hereby enters the following orders in this action:

(1) The MTA Defendants' motion for summary judgment on Plaintiff's ADA claim against Defendants LI Bus, Conway, Williams, Mandalese and Cameron is **GRANTED.**

(2) The Union Defendants' motion for summary judgment on Plaintiff's ADA claim against Defendants Local 252 and Dempsey is **GRANTED.**

(3) Plaintiff's ADA claim against Defendants McGrath, Gavin, Scott and Cassidy is **DISMISSED** with prejudice.

(4) Plaintiff's claim for breach of employment agreement against LI Bus, to the extent it is predicated upon 29 U.S.C. § 185, is **DISMISSED** with prejudice.

(5) Plaintiff's state law claims are **DISMISSED.**

(6) The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**